CENTRAL MUTUAL INSURANCE COMPANY, Plaintiff and Counter-defendant-Appellant, v. EUGENE KAMMERLING *et al.*, Defendants (Pearle Vision Center, Inc., Counterplaintiff-Appellee).

First District (5th Division) No. 1—90—1905

Opinion filed April 5, 1991.

Susan Zwick, Michael Resis, and Victor J. Piekarski, all of Querrey & Harrow, Ltd., of Chicago, for appellant.

Gerald L. Angst and Todd C. Jacobs, both of Sidley & Austin, of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Central Mutual Insurance Co. (Central Mutual) filed a declaratory action against Dr. Eugene Kammerling, its named insured, and Pearle Vision Center, Inc. (Pearle), for an adjudication of its obligations to defend and indemnify Dr. Kammerling in connection with a professional malpractice action brought against Dr. Kammerling and Pearle. Pearle filed a counterclaim against Central Mutual, seeking a determination that Central Mutual was estopped to raise any policy defenses

against Dr. Kammerling in the declaratory action. The trial court granted Pearle's motion for summary judgment on its counterclaim against Central Mutual and granted Pearle judgment against Central Mutual in the amount of $324,000, representing payment of the $300,000 liability limits of Central Mutual's policy in settlement of the underlying action and $24,000 in defense fees and costs for Dr. Kammerling. The trial court denied Central Mutual's motion for reconsideration and granted Pearle's petition for attorney fees. Central Mutual appeals the aforementioned orders. The facts concerning the case are as follows.

The original action arose out of an eye examination which Dr. Kammerling performed on Vivian Randolph (not a party to this litigation) on September 6, 1980. At all times relevant to the underlying action, Dr. Kammerling practiced optometry at one of Pearle's locations. Prior to September 6, 1980, Central Mutual had issued to Dr. Kammerling a primary liability insurance policy. This policy was in full force and effect on September 6, 1980, and provided for indemnification up to $300,000 and a separate obligation to defend claims within the coverage.

In 1982 Vivian Randolph filed a medical malpractice suit against Pearle claiming that she had been injured as a result of negligent optometric services allegedly rendered by Pearle on September 6, 1980. Initially Dr. Kammerling was not named as a defendant in the underlying action. However, in August 1987, Vivian Randolph filed a third-amended complaint adding counts XVI and XVII, and naming Dr. Kammerling as an additional defendant. The third-amended complaint alleged that Dr. Kammerling was negligent in performing the eye examination and specifically that he failed to detect glaucoma.

Pearle's excess insurance carrier, Northbrook Excess and Surplus Insurance Company (Northbrook), paid the cost of defending Dr. Kammerling. Dr. Kammerling tendered his defense to and requested indemnity from Central Mutual under the subject insurance policy by letter dated December 30, 1987. Central Mutual "reviewed" potential coverage from January 6, 1988, to April 18, 1988.

On January 6, 1988, Central Mutual sent a letter to John O'Malley, retained by Pearle's insurer to defend Dr. Kammerling, acknowledging receipt of the letter dated December 30, 1987. The letter also indicated that Central Mutual was in the process of reviewing coverage. On January 18, 1988, Central Mutual advised Dr. Kammerling of its reservation of rights due to the late notice of the loss and, further, that the claim for punitive damages was not covered under the policy.

On April 18, 1988, Central Mutual's attorneys wrote to Northbrook, stating that "[a]lthough Central [Mutual] will proceed with a declaratory judgment against its insured in this case, it recognizes its obligation to provide a defense, pursuant to a full reservation of rights, to Dr. Kammerling until that declaratory action has been resolved." Central Mutual went on to state that it had designated the law firm of Galliani & Doell, Ltd., as its attorneys, who would file an additional appearance on behalf of Dr. Kammerling in the underlying matter. Central Mutual suggested "that Mr. O'Malley of Pope, Ballard continue in his defense of Dr. Kammerling (assuming that Dr. Kammerling is agreeable) and that the costs of defense be borne by Northbrook and Central in accordance with their obligations under the policies." Central Mutual raised questions as to how the two insurance policies related to each other and further suggested that Central Mutual would "undertake to pay three-fifty thirds of all expenses incurred in the defense of this action until its declaratory judgment proceeding has been terminated."

The record reflects that Galliani & Doell, Ltd., did not file a court appearance on behalf of Dr. Kammerling in the underlying action. In fact no attorney or law firm retained by Central Mutual filed a court appearance on behalf of Dr. Kammerling in the underling action.

In response to Central Mutual's April 18, 1988, letter, by letter dated May 2, 1988, Northbrook indicated that it was going to continue to meet its own obligation to fund Dr. Kammerling's defense through John O'Malley. The May 2, 1988, letter states in pertinent part:

"This will acknowledge receipt of your letter dated April 18, 1988.

We agree that Dr. Kammerling's best interest must be served. I have advised Mr. O'Malley of your opinions as outlined in your April 18, 1988 letter. At this time, Mr. O'Malley will continue to provide Dr. Kammerling with a defense in the *Vivian Randolph* case.

Please provide a complete copy of the Central Mutual Insurance policy issued to Dr. Kammerling for the period in question. Although I have a copy of a Central Mutual Insurance policy, I am not certain it is complete. In order for me to provide our position regarding your interpretation of the way each policy applies, I will need to review a complete copy of the Central Mutual Insurance policy including the jacket, Dec sheet and any endorsements. However, from a brief review of the policy information I do have and a review of the NESCO [Northbrook] pol-

icy, I do not believe your interpretation of how the policies apply is correct. Once I have had an opportunity to analyze both policies, I believe we can discuss your proposals regarding defense costs."

By letter dated September 8, 1988, Dr. Kammerling demanded that Central Mutual offer $300,000 (its policy limit) to settle the plaintiff's suit. On October 12, 1988, Central Mutual refused to contribute to a settlement and advised Dr. Kammerling that it had "no duty either to defend or indemnify him for the action filed against him by Vivian Randolph." By letter dated November 1, 1988, Dr. Kammerling's lawyer advised Central Mutual's lawyer that he could settle the action against Dr. Kammerling for Central Mutual's $300,000 policy limit.

On November 7, 1988, Central Mutual filed its complaint for declaratory relief seeking a declaration of its rights as an insurer of Pearle under a primary policy Central Mutual issued to Dr. Kammerling. The policy provided indemnification to Dr. Kammerling of up to $300,000 plus a separate duty to defend Dr. Kammerling in malpractice suits filed against him.

In January of 1989, while the declaratory action was in the early pleading stages, Dr. Kammerling settled the litigation for $300,000. This payment was funded by Pearle and, in return for said payment, Dr. Kammerling assigned to Pearle his rights, if any, against Central Mutual for reimbursement of the settlement payment and defense costs.

On March 15, 1990, the trial court, pursuant to section 2—1005 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005), entered summary judgment against Central Mutual and in favor of Pearle in the amount of $300,000 plus attorney fees. In granting Pearle's summary judgment motion, the trial court concluded that Central Mutual: owed a duty to defend; admitted that it owed a duty to defend, but in fact failed to defend; and was estopped from asserting its defense. On May 31, 1990, the trial court entered an order finding that the amount of reasonable attorney fees and expenses spent in defending Dr. Kammerling in the underlying action was $24,000. After a denial of post-trial motions, this appeal ensued.

On appeal, Central Mutual alleges that the trial court improperly determined that Central Mutual wrongfully refused to defend Dr. Kammerling and was therefore estopped to deny liability coverage. Alternatively, Pearle asserts that an insurance carrier who fails to provide a defense to its insured after acknowledging an obligation to

do so, and who fails to file a timely declaratory judgment action as to coverage, is estopped from later raising a policy defense.

For the following reasons, we affirm the decision of the trial court.

■■ It is well-settled law in Illinois that an insurer's duty to defend an action against its insured is determined by the allegations of the complaint. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 393, 442 N.E.2d 245, 247; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193, 355 N.E.2d 24, 28.) If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy, the insurer's duty to defend has been established. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193, 355 N.E.2d 24, 28.) "An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 393, 442 N.E.2d 245, 247.) Where an insurer is uncertain as to the extent its policy provides coverage, it has two options. The insurer must defend under a reservation of rights; otherwise, the insurer must secure a declaratory judgment as to its rights and obligations before trial or settlement of the underlying action. "Where the insurer fails to take either course of action, its failure to defend is unsatisfied and it is estopped from later raising policy exclusions or defenses in a subsequent action by the insured or the insured's subrogee." (*Casualty Insurance Co. v. Northbrook Property & Casualty Insurance Co.* (1986), 150 Ill. App. 3d 472, 478, 501 N.E.2d 812, 816.) The parties recognize these settled rules of insurance law.

Central Mutual claims the aforecited rules have no application to this case since Central Mutual did not refuse to defend Dr. Kammerling. As a result Central Mutual asks this court to reverse and remand the matter for further proceedings. Pearle claims the stated cases apply to this case, and since Central Mutual failed to defend Dr. Kammerling, this court must affirm the trial court.

Central Mutual alleges that it did not refuse to defend Dr. Kammerling and, additionally, the requirement to seek a declaratory judgment in cases where the basis for the declaratory judgment is an alleged material breach of contract by the insured does not mandate a determination of the issues prior to the conclusion of the underlying litigation. *M/A Com, Inc. v. Perricone* (1989), 187 Ill. App. 3d 358, 362, 543 N.E.2d 228.

The peculiar facts of this case raise the otherwise clear application of the cited law. On April 18, 1988, Central Mutual wrote a letter to Northbrook recognizing its obligation to defend until a declaratory judgment was filed, but did not file the same until November 7, 1988, six months and 19 days after recognizing its duty and 10 months after it had notice of its potential liability for the defense of the claim against Dr. Kammerling.

Central Mutual admitted that it never retained a lawyer to defend Dr. Kammerling in the underlying action. However, Central Mutual claims that on May 2, 1988, Northbrook agreed to the coordination of defense costs incurred on behalf of Dr. Kammerling, but reserved its decision as to the actual apportionment of these costs. Pearle asserts that contrary to Central Mutual's representations, Northbrook did not agree to perform any of Central Mutual's obligations to Dr. Kammerling. We agree with Pearle and find that the May 2, 1988, letter (relevant portions previously quoted) contains no such agreement. Central Mutual points out that at no time did Northbrook reject its proposal; however, Central Mutual fails to point out that at no time did Northbrook accept its proposal. At best the correspondence indicates an offer to enter an agreement to apportion defense costs and a response that such a proposal could be discussed at a future date.

As the court stated in *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 749, 358 N.E.2d 914, 917, "[t]he contract becomes no less breached because of the fortuitous existence of another insurer who is willing to meet its own obligations." The fact that Northbrook continued to meet its own obligation to provide a defense to Dr. Kammerling did not discharge any duty Central Mutual owed Dr. Kammerling pursuant to coverage under its insurance policy. Central Mutual sat on the sidelines for at least six months and 19 days while the case against Dr. Kammerling was being played. It was only in the final days of the last quarter and after Central Mutual's lawyer was advised of the fact that the action against Dr. Kammerling could be settled for Central Mutual's $300,000 policy limits that Central Mutual filed its declaratory judgment action. As Grantland Rice once said: "After the game is over and the clouds begin to wane it isn't whether you won or lost that counts but how you played the game."

■ The court stated in *Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 387 N.E.2d 700, "[i]n Illinois, a liability insurer in doubt over whether it has a duty to defend its insured, cannot simply stand on the sidelines and wait until the tort action is completed before contesting the question of coverage." (*Reis*, 69 Ill. App.

3d at 782-83, 387 N.E.2d at 704.) A case is not over until a final order is entered, yet there appears no legally justifiable reason why Central Mutual waited until it was notified of the possible settlement of the underlying action to assert its obligation to seek declaratory relief as an alternative to its duty to defend.

There may be cases where an insurer's delay for a period of time in bringing its declaratory action after a reservation of rights does not operate as an estoppel, but such facts do not appear in this record. The only defense Central Mutual suggests relevant to its duty to defend is that Dr. Kammerling's failure to inform Central Mutual of the occurence (the eye examination of Vivian Randolph on September 6, 1980), seven years after it took place, constituted a breach of the insurance policy and relieved it of its obligation to defend or indemnify. However, Central Mutual failed to assert this claim for 10 months after it had notice of loss and months after it had notice of a possible settlement of the underlying controversy. Furthermore, Central Mutual acknowledged its duty to defend under a reservation of rights. No reason equitable or otherwise suggests itself in the record as to why Central Mutual delayed its legal obligation to file a declaratory action during this period. We find that the trial court properly entered summary judgment in favor of Pearle and against Central Mutual.

Central Mutual cites the case of *M/A Com, Inc. v. Perricone* (1989), 187 Ill. App. 3d 358, 543 N.E.2d 228, to support its position that no estoppel was involved in the present case. In *M/A Com, Inc. v. Perricone* the specific issue was whether an insurer's failure to defend an insured based on late notice of the claim is estopped from raising the late notice defense in a subsequent garnishment action by the judgment creditor. The court held that the issue of whether a delay in notice constituted a breach of policy provision requiring notice "as soon as practicable" is determined by a standard of reasonableness based upon the facts and circumstances of the particular case. The court reversed and remanded the cause for a determination of the factual issue of the reasonableness of the notice. (*M/A Com, Inc. v. Perricone* (1989), 187 Ill. App. 3d 358, 543 N.E.2d 228.) We feel that *M/A Com, Inc. v. Perricone* is distinguishable from the present case. This case involves an action between the insured and the insurer, not a subsequent garnishment proceeding. This is a case where the insurer (Central Mutual) recognized its obligation to the insured (Dr. Kammerling) under its policy of insurance, had knowledge that the law required it to file a declaratory action after indicating its res-

ervation of rights to Dr. Kammerling, and then failed to file its declaratory judgment until it had notice of settlement proceedings.

Dr. Kammerling assigned his rights under his Central Mutual policy to Pearle in consideration of Pearle's funding Dr. Kammerling's defense and settlement payment. Central Mutual asserts for the first time on appeal that Pearle may not claim an estoppel against Central Mutual because "at no time before judgment on its counterclaim did Pearle produce any evidence of an assignment from Dr. Kammerling." Central Mutual did not raise the issue of Pearle as an assignee of Dr. Kammerling until this appeal. We note, however, at oral argument Central Mutual's lawyer conceded that raising the issue was error; thus, we need not address the issue.

Accordingly, for the reasons set forth above, we affirm the decision of the trial judge.

Judgment affirmed.

LORENZ, P.J., and GORDON, J., concur.