DAYTON ELECTRIC
MANUFACTURING
CO., Plaintiff,

v.

APCOM, INC. and Liberty Mutual
Insurance Co., Defendants.

No. 89 C 8698.

United States District Court,
N.D. Illinois, E.D.

Jan. 17, 1992.

Mark S. Dym, Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., Chicago, Ill., for plaintiff.

Lawrence B. Finn, Edward J. McCambridge, Segal, McCambridge, Singer & Mahoney, Ltd., Chicago, Ill., for defendants.

ORDER

NORGLE, District Judge:

Before the court is the summary judgment motion of APCOM, Inc. ("APCOM") and Liberty Mutual Insurance Co. ("Liberty Mutual" or collectively "defendants") pursuant to Federal Rule of Civil Procedure 56(c). The court denies summary judgment for defendants and grants summary judgment, *sua sponte,* for plaintiff.

## FACTS

APCOM manufactures water heater element lines.[1] Dayton Electric Manufacturing Co. ("Dayton") purchased these water heater elements from APCOM, labeled them as Dayton water heater elements, and sold them to companies for incorporation into water heaters which were in turn sold to the general public. APCOM was the sole supplier of water heater elements to Dayton, and Dayton's parent company W.W. Grainger ("Grainger"), at all relevant times.

When Dayton purchased water heater elements from APCOM, they did so on a purchase order form that contained a paragraph that stated in relevant part:

> 3. **Product liability indemnity; hazardous substance and OSHA compliance:**
>
> (a) Seller [APCOM] agrees to protect, defend, indemnify, assume any liability, save and hold harmless Grainger, its agents, subsidiaries and affiliates, employees, insurers, successors and assigns, from and against any claims, demands, suits, liabilities, penalties, losses, damages, or charges, settlements, judgments, costs and expenses (including attorneys fees incurred) by any person arising out of or allegedly based on any alleged defect, failure, breach of warranty (express or implied), of or connected with any product covered by this order or arising out of any actual or alleged violation by such products of any statute, ordinance, administrative order, rule, or regulation.

APCOM and Dayton concede they are bound by the terms of this paragraph.

Paragraph 4 of those same purchase orders required APCOM to "procure broad form vendors liability insurance coverage naming W.W. Grainger, Inc. and its subsidiaries and affiliates as named insured[s]...." APCOM purchased a Comprehensive General Liability insurance policy from Liberty Mutual. The policy covered not only APCOM, but also Grainger and Dayton as required by paragraph 4 of the purchase orders. There is no dispute that the policy was in force and effect and no party claims that Grainger and Dayton were not covered by it.

In 1988, 49 lawsuits were filed in the Court of Common Pleas in Philadelphia, Pennsylvania ("Philadelphia suits"). Dayton was named as a defendant and it was alleged that Dayton's water heater elements exposed people present at the 30th Street Station area of the Philadelphia Amtrak Rail system to asbestos.[2] Dayton was served with a summons and complaint for each of these suits and these papers were forwarded to APCOM and Liberty Mutual.

By a letter dated February 22, 1988, the attorney for Grainger and Dayton, Joel Gusky ("Gusky"), asked APCOM, through President George Fehrmann ("Fehrmann"), to defend Grainger in these actions and enclosed a copy of one of the complaints. That letter also contained the following sentence: "We have ascertained that the products claimed to contain asbestos are those included in the attached Installation Instructions for Water Heater Elements." The Installation Instructions were those supplied by APCOM with its water heater elements when sold to Dayton. After receiving no response to their request for defense, Grainger sent another letter, containing essentially the same information, to Fehrmann on March 21.

Shortly after receipt of the letters, J. Kurt Straub ("Straub") was retained as counsel on behalf of APCOM and Liberty Mutual. In late March, 1988, he called Gusky concerning the Philadelphia suits. Gusky relayed information obtained during a meeting he had had with attorneys for the plaintiffs in the Philadelphia suits and other information which demonstrated that APCOM's elements were the subject of the suit. Straub stated that the water heater elements at issue contained no asbestos.

---

1. The facts are taken from the complaint and statements of material facts supplied by all parties in accord with Local Rule 12(m) and 12(n).

2. For a listing of these suits, *see* Complaint, at 3–6. *Dayton Elec. Mfg. Co. v. APCOM, Inc.,* No. 89 C 8698 (N.D.Ill. filed Nov. 22, 1989).

In an April 20, 1988 letter Straub sent to Grainger, he wrote, "[y]ou do not state that APCOM was the sole supplier of these products. In order to properly evaluate this tender of defense, we will need to know whether or not you are contending that APCOM was your sole supplier of these heater elements...." He later wrote, "I do not see any representation or claim in your letter that the subject water heater elements do not contain asbestos.... If you do not [contend the water heater element product contains asbestos], then I trust you will withdraw the Tender of Defense."

After additional investigation, it was determined that the subject APCOM–Dayton water heater elements never contained asbestos. In order to have the Philadelphia suits dismissed, Straub and Gusky worked together and eventually obtained an affidavit from Fehrmann dated July 28, 1988, which stated that the water heater elements never contained asbestos.

The next correspondence was dated January 19, 1989. In it, Grainger notified AP-COM of Grainger's intention to seek legal fees and expenses incurred in the defense of the Philadelphia suits. It also reiterated that APCOM products were the subject of the suits and quoted paragraph 3 of the Purchase Orders recited above.

On February 3, yet another letter was sent to Fehrmann. The letter briefly summarizes the facts as they had developed and noted the large legal fees generated by Grainger in its own defense of the suits for which APCOM was required to defend. It concludes with a request for an immediate response. Grainger sent another letter on February 20 requesting a response.

Straub responded in a February 23 letter which highlighted the Fehrmann affidavit and indicated his dismay as to why the Philadelphia suits were still pending given the statements contained in that affidavit. Straub also hypothesized that the cause of this delay might be that the claims were not solely based on APCOM's non-asbestos containing water heater elements but rather on some other product of Dayton. On April 13, 1989, Grainger sent a letter to Straub in which Grainger denied that any other Dayton product was at issue in the Philadelphia suits.

On May 15, Fehrmann and Grainger manager Ron Maloney had a phone conversation in which Maloney reiterated that the APCOM water heater elements were the subject of the suits and asked APCOM to defend. Fehrmann communicated that if there was an asbestos problem, APCOM would defend. Fehrmann also repeated his concern that APCOM water heater elements were at the heart of the suits. Maloney confirmed the conversation by correspondence dated May 17. Later that month, Gusky obtained an executed stipulation of dismissal, dismissing Dayton from all the Philadelphia suits. On July 24, 1989, the Pennsylvania court entered an order on that stipulation dismissing Dayton as defendant in the Philadelphia suits.

Dayton filed suit on November 22, 1989 against APCOM and Liberty Mutual. The complaint, based on this court's diversity jurisdiction, asserted breach of contract claims against both defendants.[3] APCOM and Liberty Mutual filed a transfer of venue motion which the court denied on April 19, 1990. After extensive discovery, defendants filed a motion for summary judgment along with supporting materials required by Local Rule 12(m).[4] Dayton filed a re-

---

**3.** Paragraph 1 of the purchase order states that Illinois law shall control resolution of controversies between the parties.

**4.** Local Rule 12(m) provides:
With each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure the moving party shall serve and file, in addition to the affidavits (if any) and other materials referred to in Rule 56(e) and supporting memorandum of law, a statement of material facts as to which moving party contends there is no genuine issue and that the moving party is entitled to a judgment as a matter of law including a description of the parties and all facts supporting venue and jurisdiction in this Court. That statement shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a

sponse and its statement as required by Local Rule 12(n). Defendants then filed a reply to the response and a response to the 12(n) statement.

■ Defendants' motion for summary judgment may be simply summarized. They contend that it is undisputed that Grainger and/or Dayton did not specifically identify to defendants that the subject of the Philadelphia suits was their product. As a result, they had no duty to defend in the action because their product was not known to be the subject of litigation that required a defense.[5]

## DISCUSSION

The issue here is a very narrow one. The court must decide whether the facts are clear that defendants were aware that it was their product that was the subject of the Philadelphia suits. If they were not, there was no duty to defend and summary judgment for defendants is proper. If they were, there was a duty to defend and summary judgment for defendants is improper.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir. 1991). A plaintiff cannot rest on mere allegations of a claim. *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir.1991), a scintilla of evidence will not

suffice to oppose a motion for summary judgment. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991). Nor will some metaphysical doubt suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Rather, a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

The court finds that there is no genuine issue of material fact. Indeed, none of the parties dispute what happened here in any real respect. They agree that Dayton was sued in the Philadelphia suits for the sale of allegedly defective water heater elements. They agree that the APCOM–Dayton water heater elements were the subjects of these suits. They agree that there was extensive correspondence between all parties and their counsel during the pendency of that litigation. They agree that neither of the defendants ever defended Grainger or Dayton nor did defendants ever reimburse Grainger or Dayton for the costs incurred in their defense of the action. Without any genuine issue of material fact being present, summary judgment can properly be granted.

---

statement constitutes grounds for denial of the motion.

The 12(m) presentation by defendants is quite extensive and contains deposition transcripts, letters, notes, product information, and other materials.

**5.** Although not explicitly argued, an alternative basis for APCOM's ongoing denial of a duty to

defend was that there was no asbestos in the product and thus the suits themselves lacked merit. Perhaps the reason this argument is not specifically made is because the fact that the insurer has a defense to the action is not an excuse for refusal to defend. *Murray Ohio Mfg. Co. v. Continental Ins. Co.*, 705 F.Supp. 442, 445 (N.D.Ill.1989).

What is of substantial dispute here is the legal import of those facts under the terms and obligations of the parties' agreement. To make this determination, the court must briefly examine Illinois insurance law.

A prefatory note is necessary. The court is aware that APCOM is not an insurance company as defined by Illinois law. *See generally* Ill.Rev.Stat. ch. 73, ¶ 613 *et seq.* (1991). However, under the terms of the purchase order forms, it assumed the role of defender of Dayton in cases where AP-COM's products were the subject of product liability suits. In this case, therefore, APCOM was in fact an insurer and thus the law applicable to insurance companies applies to them. Additionally, as the liability of both APCOM and Liberty Mutual depends on whether the product was sufficiently identified, their liability is discussed and determined jointly.

■ An insurer's duty to defend an action against its insured is determined by the allegations of the complaint. *Conway v. Country Cas. Ins. Co.*, 92 Ill.2d 388, 393, 65 Ill.Dec. 934, 936, 442 N.E.2d 245, 247 (1982). An insurance company wishing to dispute its duty to defend has three options. First, it may ask a court to determine, in a declaratory judgment action, whether there is coverage. Second, it may defend without certainty as to coverage and retain a reservation of rights if it is later determined there was no coverage. Third, it may altogether refuse to defend and risk a finding that it acted improperly in denying defense. *Insurance Corp. of Ireland, Ltd. v. Board of Trustees*, 937 F.2d 331, 337 (7th Cir.1991).

■ The obligation to defend an insured is separate, distinct, and broader than the duty to indemnify for loss and arises "whenever the loss is even arguably within the policy." *Western Cas. & Sur. Co. v. Western World Ins. Co.*, 769 F.2d 381, 385 (7th Cir.1985). Thus, as a rule, when there is some question concerning the duty to defend, it is better for the insurance company to defend under a reservation of rights, or simply defend outright, than to deny a defense entirely. *A. Kush & Assoc., Ltd. v. American States Ins. Co.*, 927 F.2d 929, 934 (7th Cir.1991). Moreover, the fact that the insurer has defenses available to it in the action in which it was asked to defend the insured does not relieve it of its duty to defend. *Murray Ohio Mfg.*, 705 F.Supp. at 445; *Sears, Roebuck & Co. v. Employers Ins. of Wausau*, 585 F.Supp. 739, 745 (N.D.Ill.1983).

■ The present facts do not support defendants' position that their water heater elements were clearly not identified. As early as February 1988, defendants were notified of the existence of the claims on Dayton water heater elements. APCOM President Fehrmann, with the assistance of APCOM counsel, submitted an affidavit for use in the Philadelphia suits. There were literally dozens of communications between the parties concerning the Philadelphia suits. Given the extremely broad duty that an insurer assumes when agreeing to defend (*see Western Cas.*, 769 F.2d at 385), this court cannot say, as a matter of law, that APCOM was not sufficiently notified that its water heater elements were the subject of the Philadelphia suits in order to require it to defend Dayton. As a result, the court denies defendants' motion for summary judgment.

Notwithstanding the court's denial of summary judgment for defendants, the court's business is not complete. After this review of the facts and the applicable law, the court concludes that plaintiff is entitled to judgment as a matter of law. Because plaintiff has filed no motion for summary judgment, the court moves for summary judgment *sua sponte*, and grants that motion. Because the court's power to grant a motion for summary judgment *sua sponte* is not entirely clear, the court begins with an analysis of applicable law.

A *sua sponte* motion for summary judgment warrants special caution, *Sawyer v. U.S.*, 831 F.2d 755, 759 (7th Cir.1987), and is sometimes considered hazardous. *Doe ex rel. Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 415 (7th Cir.1986). Indeed, the very existence of the power to do so, at least in the Seventh Circuit, is not entirely free from doubt. *Compare Choudhry v. Jenkins*, 559 F.2d 1085, 1088–89 (7th Cir.1977)

(*sua sponte* motion for summary judgment reversed because took all by surprise); *Horn v. City of Chicago,* 860 F.2d 700, 703–04 & n. 6 (7th Cir.1988) (improper *sua sponte* conversion of motion to dismiss to summary judgment); *and Macon v. Youngstown Sheet & Tube Co.,* 698 F.2d 858, 861–62 (7th Cir.1983) (*sua sponte* motion for summary judgment was proper because motion to dismiss pending); *Sawyer,* 831 F.2d at 759 (improper granting of *sua sponte* motion for summary judgment although acknowledging power in certain cases).

■ Decisions from other circuits and notations from commentators, however, clearly recognize the power of a district court to move for and grant summary judgment *sua sponte. Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991) ("it is most desirable that the court cut through mere outworn procedural niceties and make the same decision as would have been made had the defendant made a cross-motion for summary judgment" (quoting *Local 33, Int'l Hod Carriers Bldg. & Common Laborers' Union of Amer. v. Mason Tenders Dist. Council of Greater N.Y.,* 291 F.2d 496, 505 (2d Dist.1961))); *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.,* 932 F.2d 442, 445 (5th Cir.1991) ("[i]t appears that . . . district courts can definitely grant summary judgment *sua sponte*"); 6 Moore's Federal Practice, ¶ 56.12, p. 56–162 ("non-movant can get summary judgment [*sua sponte*] supported by the great weight of authority"); *but see Williams v. St. Louis,* 783 F.2d 114, 117 (8th Cir.1986) (holding that without a motion pending, the court lacks the power to move *sua sponte* for summary judgment).[6] Finally, although prior to 1986 the Supreme Court rarely supported liberal use of the summary judgment rule (*see* Marcy J. Levine, *Summary Judgment: The Majority View Undergoes a Complete Reversal in the*

*1986 Supreme Court,* 37 Emory L.J. 171 (1988) (giving a historical review of summary judgment)), 1986 proved to be the year in which the Court recognized the usefulness of the rule and fully supported its use. *Celotex Corp.,* 477 U.S. at 326, 106 S.Ct. at 2554 ("district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*"); *see also* Samuel Issacharoff and George Loewenstein, *Second Thoughts About Summary Judgment,* 100 Yale L.J. 73 (1990).

■ Its use may also be justified on the basis of judicial economy. As the court has already determined that there is no genuine issue of material fact that remains, denying defendants' motion and then granting plaintiff leave to file a motion for summary judgment would serve no useful purpose. Disposition of the case would be stalled, more legal fees would be generated, and the case would remain on the court's docket for many weeks, waiting for the inevitable result. Thus, the interests of judicial economy support a *sua sponte* motion for summary judgment given the court's holding that there is no genuine issue of material fact. *But see Horn,* 860 F.2d at 703 n. 6 (discussing circumstances in which use of procedure wastes judicial resources).

■ The existence of this power is supported by other portions of the federal rules. Federal Rule 54(c) allows the district court to enter judgment for any type of relief, irrespective of the relief prayed for, except in cases of default. The court may also dismiss a case, *sua sponte,* for failure to state a claim upon which relief could be granted (*Ricketts v. Midwest Nat'l Bank,* 874 F.2d 1177, 1182–83 (7th Cir.1989)), for patently lacking subject matter jurisdiction (*Crowley Cutlery Co. v. U.S.,* 849 F.2d 273, 277–78 (7th Cir.1988)), or for want of prosecution (*Daniels v. Brennan,* 887 F.2d 783, 785 (7th Cir.1989)). These rules demonstrate the broad and

---

**6.** A recent opinion seems to move away from the hard and fast rule that there is no *sua sponte* summary judgment power in the Eighth Circuit. *Johnson v. Bismarck Pub. School Dist.,* 949 F.2d 1000 (8th Cir.1991), stated that the Eighth Circuit had not clearly addressed the issue and cuit had not clearly addressed the issue and then construed *Williams* as only requiring strict compliance with Rule 56. In any event, in the case then before the court, it held the district court's granting of summary judgment was proper even though no summary judgment motion was pending. *Id.* at 1004. .

sweeping powers vested in the district court. When combined with decisions of the vast majority of federal courts that recognize the authority, this court is convinced it has the power to move for summary judgment *sua sponte.*

This court determines that this is one of the few cases in which a *sua sponte* motion for summary judgment would be proper and therefore makes that motion. Before deciding whether judgment is properly granted, the court must review the standards relevant to this decision.

Summary judgment may be granted "for a party without a motion, when the outcome is clear, so long as the opposing party has had an adequate opportunity to respond." *Sawyer,* 831 F.2d at 759. The judgment is proper "so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554. Thus, when the court has no summary judgment motion pending, it is error to grant a *sua sponte* motion for summary judgment without first giving notice to the parties in compliance with Rule 56(c), unless such notice would be impracticable. *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 945 F.2d 53, 54 (2d Cir.1991); *McCarty v. U.S.,* 929 F.2d 1085, 1088 (5th Cir.1991). This requirement minimizes the chance of procedural prejudice in granting the motion. All inferences are to be drawn in favor of the party against whom summary judgment is sought to be imposed. *NL Indus., Inc. v. GHR Energy Corp.,* 940 F.2d 957, 965 (5th Cir.1991).

In the instant case, defendants moved for summary judgment. In so doing, they state their belief that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. This necessarily requires the court to examine the facts and the law. The defendants asked this court to decide the case as a whole. When the court does just that, the defendants cannot claim unfair surprise.

Moreover, because defendants made the original motion for summary judgment, they had much more incentive to develop the record fully, and did so. Defendants' posture in their motion was not unlike that of an affirmative defense—even if all the foregoing facts were true, defendants were not sufficiently notified so as to warrant the defense of Dayton in the Philadelphia suits. Defendants had a very real motive to disclose every single fact and then place it in the light that best served their defense. In this way, they hoped, they could show the court that the facts should not have indicated to them that their product was adequately identified. Even a cursory glance at the 12(m) statement shows that they developed the factual record in precise detail.

Nor could defendants claim that this suit was so new that they had inadequate opportunity to develop the record. Extensive discovery had been conducted. Interrogatories had been served and answered, requests for production requested and answered, and volumes of depositions had been taken. Litigation for alleged discovery abuses had taken place. Defendants filed at least one motion to compel production of documents. All discovery has now been closed. Thus, all parties had a thorough opportunity to develop the record. *See A.F.A. Tours, Inc. v. Whitchurch,* 937 F.2d 82, 88 (2d Cir.1991) (holding that all issues of the litigation must be disclosed before granting of summary judgment *sua sponte* is proper).

There is little chance of procedural prejudice. The threat of procedural prejudice is greatly diminished when the court grants, *sua sponte,* summary judgment on issues that are the same as those presented in a party-filed motion for summary judgment. *Coach Leatherware,* 933 F.2d at 167. This is so because it affords the opposing party the opportunity to fully develop the record. *See id.* Here, defendants filed a motion for summary judgment claiming that their product was not sufficiently identified so as to warrant defense. This court's motion for summary judgment is on exactly the same basis, but for the opposite party.

It is clear, in this case, that the product was sufficiently identified so as to warrant a duty to defend on the part of the defen-

dants. The purchase order forms, the binding instruments here, were drafted in very broad language. APCOM agreed to "defend [Dayton] ... from and against any claims, demands, suits, liabilities, penalties, losses, damages, or charges, settlements, judgments, costs and expenses (including attorneys fees incurred) by any person arising out of or allegedly based on any alleged defect, failure, breach of warranty (express or implied), of or connected with any [APCOM manufactured] product...." It is difficult to imagine how any product liability litigation concerning the water heater element would not be covered by this paragraph.

Defendants do not dispute that they had a broad duty to defend. They contend that they were never told that it was an APCOM water heater element that was the subject of the suit. The undisputed facts are heavily to the contrary.

For instance, on February 22, 1988, Joel Gusky, on behalf of Grainger and Dayton, wrote APCOM and asked them to defend Grainger and Dayton in the Philadelphia suits. That letter stated in part, "We have ascertained that the products claimed to contain asbestos are those included in the attached Installation Instructions for Water Heater Elements. Since we have merely purchased these items from you beginning July 29, 1977, we are hereby tendering defense of all these claims to you." Thus, as early as February 22, 1988, defendants knew they arguably had a duty to defend the Philadelphia suits.

Even more demonstrative of the defendants' knowledge that APCOM products were the subject of the Philadelphia suits is the efforts undertaken by APCOM/Liberty Mutual attorney Straub. Straub and Gusky worked together over a period of several months in an effort to obtain an affidavit from APCOM President Fehrmann that stated that the water heater elements contained no asbestos. They eventually obtained the affidavit which ultimately lead to the dismissal of all suits in which Dayton and Grainger were defendants. This extensive involvement would not be necessary if APCOM did not believe its products were the subject of the suits. The evidence overwhelmingly supports the conclusion that defendants knew that their product was the subject of the Philadelphia suits.

Yet defendants contend that they were never told that their products were the allegedly defective ones because Dayton never told APCOM that APCOM was the sole supplier of the elements to Dayton. In the first instance, that is simply not the case. *See* Letter from Jane Hinto–Kedo, Claims Attorney for W.W. Grainger, Inc., to George Fehrmann, President of APCOM, Inc. 1 (Jan. 19, 1989). However, even absent this letter, APCOM did not need to be completely satisfied that it had a duty to defend before that duty to defend materialized. Potential liability on the part of the insurer, not absolute certainty, triggers the duty to defend. *Hertz Corp. v. Garrott,* 207 Ill.App.3d 644, 648, 152 Ill. Dec. 650, 653, 566 N.E.2d 337, 340 (1st Dist.1990). Even a groundless, baseless, or fraudulent case must be defended by the insurer. *Bituminous Cas. Corp. v. Fulkerson,* 212 Ill.App.3d 556, 562, 156 Ill.Dec. 669, 674, 571 N.E.2d 256, 261 (5th Dist. 1991). When the insurer is unsure of coverage, it may litigate the issue separately, or defend with a reservation of rights. *Central Mut. Ins. Co. v. Kammerling,* 212 Ill.App.3d 744, 748, 156 Ill.Dec. 826, 829, 571 N.E.2d 806, 809 (1st Dist.1991). Here, APCOM knew that Dayton and Grainger were being sued as a result of the sale of some water heater elements. By ignoring the clear statements and indications of Dayton and Grainger that APCOM products were the subject of the suits, APCOM (and thus Liberty Mutual) breached its duty to defend. *Playboy Enters., Inc. v. St. Paul Fire & Marine Ins. Co.,* 769 F.2d 425 (7th Cir.1985).

### CONCLUSION

Defendants have moved for summary judgment. They are correct that, based on this extensively developed record, no genuine issue of material fact remains. However, defendants are not entitled to judgment as a matter of law. The court has

determined that it possesses the power to make a motion for summary judgment *sua sponte*. This court finds that the evidence overwhelmingly favors plaintiff. Therefore, the court grants summary judgment on behalf of the plaintiff.

IT IS SO ORDERED.