PROVIDENCE HOSPITAL, Plaintiff,

v.

ROLLINS BURDICK HUNTER
OF ILLINOIS, INC., et al.,
Defendants.

BERTRAND GOLDBERG ASSOCIATES,
INC., Cross-claimant,

v.

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON, et al.,
Cross-defendants.

No. 92 C 8096.

United States District Court,
N.D. Illinois, E.D.

May 27, 1993.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

### STATEMENT OF FACTS

Defendant and cross-claimant Bertrand Goldberg Associates, Inc. ("BGA") is an Illinois architectural firm. BGA has been sued in the Southern District of Alabama by Providence Hospital for negligence in performing architectural services for a replacement hospital project in Mobile. BGA filed a cross-claim against its co-defendant and its professional liability insurer, certain underwriters at Lloyd's, London, et al. ("Insurers"), seeking a declaratory judgment of the Insurers' duty to defend under BGA's policy, and full coverage under the policy and punitive damages for the exercise of bad faith in its denial of coverage. Fed.R.Civ.P. 13(g). The insurers' for their part have filed a counterclaim, seeking, through seven rather finitely drawn counts, a declaratory judgment of non-coverage. Fed.R.Civ.P. 13(a). While the underlying action by Providence Hospital rages on in Alabama, the coverage dispute between BGA and the insurers has been transferred to this court under the change of venue statute. 28 U.S.C. § 1404(a). Ironically, a declaratory judgment action filed by the insurers in the Illinois' courts was dismissed under *forum non conveniens*, although that decision is under appeal. Before the court now is BGA's motion to dismiss the insurers' counterclaim.

The counterclaim alleges that BGA's coverage is contained in four policies of professional liability insurance covering the period from August 17, 1987 through August 17, 1988.[1] BGA operated without professional liability insurance for some 27 months prior to this period. The policies provided "claims made" coverage, meaning that BGA would be covered for claims about which the insurers were notified within the policy period.

Through BGA's insurance broker, Eugene Tkalitch & Associates, the insurers arranged to insure BGA for this period provided the policy did not provide coverage for acts which took place prior to its effective date. All placement slips or telexes confirming coverage indicated that the policies "retro date" was the inception of coverage.

Subsequently, a broker for AIIC filed two "cover notes" and a copy of AIIC's policy with the Illinois Department of Insurance as part of a state tax filing. These cover notes did not contain a retro date for coverage, although they did refer to such a date in concept. An employee of Tkalitch & Associates mistakenly informed BGA that the cover notes were the original policies.

Counts I–IV of the seek alternative relief of: 1) a declaratory judgment that the policies issued to BGA, and not the cover notes, are the controlling policy documents; 2) a declaratory judgment that, assuming the cover notes are the controlling documents, they be found to have a retro date of August 17, 1987, the commencement of coverage; or 3) assuming the cover notes are found to provide retroactive coverage prior to this date, their reformation. Counts V–VII seek a declaratory judgment of non-coverage under either the cover notes or the policies for Providence Hospital's claim pursuant to various exclusions and limitations in policy language.

### ANALYSIS

The court's task in resolving a Rule 12(b)(6) motion is to ask whether relief is possible under any set of facts that could be established consistent with the allegations. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992). In doing so, the court takes the allegations in the counterclaim, and any reasonable inferences which can be drawn from them, in a light most favorable to the counterclaimant. *See Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir.1991).

BGA makes three arguments for dismissal of the counterclaim in whole or in part.

---

1.  As is customary with LLoyd's, London policies, each of the insurers insured a portion of the total risk, underwriting 90% of the policy. The re- maining 10% of the risk was underwritten by Associated International Insurance Co. ("AIIC"), a California Insurer.

First, they assert that Counts I–IV are barred by the application of Alabama public policy. Second, they claim that if Alabama law applies to the policies, Counts V–VII are barred by the state's law of waiver. Finally, they claim that under Illinois law, the entire claim would be barred by estoppel. Of necessity then, the court first must determine whether to apply the law of Illinois or Alabama to the interpretation of the insurance policy.

■ As the recipient of a diversity case transferred under the change of venue statute, the court must apply the choice of law rules of the transferor court's forum state. *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 820–21, 11 L.Ed.2d 945 (1964). This principal applies whether transfer is requested by the plaintiff or defendant. *Ferens v. John Deere Co.*, 494 U.S. 516, 523–27, 110 S.Ct. 1274, 1280–81, 108 L.Ed.2d 443 (1990). Thus the court must apply Alabama's choice of law principles.[2]

In interpreting an insurance policy, Alabama courts apply the law of the state of the policy's issuance. *Ailey v. Nationwide Mutual Insurance Co.*, 570 So.2d 598, 599 (Ala. 1990); *Donegal v. Mutual Insurance Co. v. McConnell*, 562 So.2d 201, 203 (Ala.1990). Thus Illinois law would normally govern the interpretation of the policy between BGA and insurers.

However, BGA has provided authority for the proposition that Alabama courts will prevent enforcement of a contract in violation of the state's public policy even if another state's law governs its interpretation. *Cherry, Bekaert & Holland v. Brown*, 582 So.2d 502, 507 (Ala.1991); *Wixom Bros. Co. v. Trick Insurance Exchange*, 435 So.2d 1231, 1233 (Ala.1983), *overruled on other grounds*, *U.S. Fidelity & Guaranty Co. v. Warwick*

*Development Co, Inc.*, 446 So.2d 1021, 1024 (Ala.1984). The *Brown* case is distinguishable because there the initial choice of law came from the parties' contractual stipulation, not application of Alabama's other choice of law rules. The *Wixom* decision, on the other hand, is controlling, and mandates consideration of BGA's public policy argument.

## I. Alabama Public Policy on Prior Acts Coverage For Claims Made Policies

■ BGA argues that in *First Alabama Bank v. First State Insurance Co.*, Case No. 83 G 2082 S, 1987 WL 68423, 1990 U.S.Dist Lexis 17355 (N.D.Ala.), *aff'd in part and rev'd in part*, 899 F.2d 1045 (11 Cir.1990), the district court for the Northern District of Alabama concluded that under Alabama law, claims made policies which do not offer prior acts coverage violate the state's public policy. The court's conclusions in *First Alabama Bank* were based on review of a quartet of Alabama cases, *Wixom*, *Warwick*, *Utica Mutual Insurance Co. v. Tuscaloosa Motor Co.*, 295 Ala. 309, 329 So.2d 82 (1976), *overruled by Wixom*, 435 So.2d 1231, and *Langley v. Mutual Fire, Marine & Inland Insurance Co.*, 512 So.2d 752 (Ala.1987), *overruled on other grounds*, *Hickox v. Stover*, 551 So.2d 259 (Ala.1989). Independent review of these cases by this court indicates that Alabama's public policy does not require a similar result, at least in this case.

In *Utica*, the first of these cases, the policy in question was an "occurrence" policy, providing coverage for events occurring within the period of coverage, regardless of whether notice of claim was filed within that time. The issue in the case was whether the policy provided coverage for negligent acts per-

---

**2.** The insurers have argued that under *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295 (D.Md.1977), a transferee court may apply its own forum state's law if strong public policies for its enforcement exist. A closer analysis of *Lewis* show it to be the right result, for the wrong reasons. The plaintiff in *Lewis* filed suit for violations of the federal securities laws, and also filed a pendent state claim under New York's securities laws. The court's published opinion concerned a motion for a protective order, based on Maryland's statutory grant of privilege to ac-

countant-client communications. The court, after stating the principal of law cited by the insurers, held that in a diversity case, courts apply the law of privilege of their forum state. *Id.*, at 312. This result is consistent with the holding of the *Van Dusen* court that a transferee court may apply its own rules governing the conduct and dispatch of cases in its court. In the present case, the conflict of laws presented is substantive, and does not fall within the scope of the Federal Rules of Evidence.

formed by the insured during the policy period causing injury after the expiration of coverage. *Utica*, 329 So.2d at 83. The Alabama Supreme Court held that an "occurrence" of bodily injury or property damage, for policy purposes, must result during the policy period. *Id.*, at 83.

In dissent, Justices Jones and Shores opined that this result violated public policy because it would allow a situation in which successive policies under different carriers could create a hiatus in coverage without a break in premium. Thus, where an act causing injury occurs during one period of coverage, and the injury occurs in another, the insurer could end its contractual liability before the insured's legal liability expired, leaving the insured without a remedy for the very liability it sought to protect against. *Id.*, at 86–88. This situation presupposed that the second occurrence insurer would exclude coverage for prior acts, just as the insurers here did.

In *Wixom*, the Supreme Court faced the same problem as in *Utica*. However, the court now took the opportunity to adopt the dissent in that case. *Wixom*, 435 So.2d at 1232–34. For the public policy reasons set forth in the *Utica* dissent, the court now held that an occurrence is within the policy period if the act causing bodily injury or property damage occurred within that period.

This position was abruptly reversed in *Warwick*, the court holding that the time of an occurrence must be when the complaining party is damaged, not when the wrongful act causing damage occurs. *Warwick*, 446 So.2d at 1024. More interesting was the dissent in *Warwick*, again by Justices Jones and Shores. They indicated that their concerns, as expressed in *Utica*, were that by manipulating the definitions of "occurrence," an insurer could create a gap in coverage between policy periods. In doing so, they indicated the real concern behind Alabama's public policy:

> In other words we were concerned that successive policies, by varying definitions of "occurrence," could leave an insured, who thought that he had continuing coverage, without protection under either policy . . . we now realize that we should have

concurred in the result of *Utica*, . . . pointing out the public policy consideration that would be invoked only where the coverage issue is presented in the context of inconsistent definitions

*Id.*, at 1026.

This policy was considered again by the court in the context of a claims made policy in *Langley*. The *Langley* court indicated that the potential problem inherent in successive coverage periods was exacerbated for claims made policies, because of their differences with occurrence policies. Occurrence policies possessed a "tail," extending coverage past the expiration date of the policy period even if notice of a claim is not given. The court held that to extend coverage of a claims made policy beyond the policy, giving it an occurrence type tail, would be like an free extension of coverage, hence impermissible. *Langley*, 512 So.2d at 761–62.

The *Langley* court then went on to consider the various policy arguments for requiring a claims made insurer to extend coverage beyond the end of its policy period. In particular the court was concerned with the argument that a claims made policy in effect holds the insured hostage, requiring the insured to maintain coverage to avoid the successive coverage problem posed in *Utica*, and *Wixom*. The court rejected the idea of required coverage, instead indicating that the insured could get prior acts coverage from the successor insurer, maintain coverage with the present insurer, or obtain an extended reporting period for claims for a higher premium. *Id.*, at 759–60, 762.

These cases reveal two concerns in Alabama's public policy, which may come into conflict. The first is the desire to avoid the successive coverage problem. The second is to allow claims made policies, without making them *de facto* occurrence policies. In this case, unlike *Langley*, the question is whether to extend coverage of a claims made policy into the past, rather than the future. This is similar to the situation presented in *First Alabama Bank*, except that there the insurer was in the position of renewing its own policy, whereas here the insurers are successors to a period of no coverage at all.

Three possibilities exist for application of Alabama law to a successor insurer providing claims made coverage. First, the insurer could follow a period of occurrence coverage. In this case, it would be highly unlikely that a hiatus in coverage would occur, since any claim not occurring during the first period of coverage would simply be subject to notice provisions of the claims made policy. Therefore Alabama's public policy would not prohibit prior acts coverage. Second, the insurer could follow another period of claims made coverage, provided by another insurer, or by itself. This situation does present the coverage problem of *Utica*, and public policy would require some form of coverage overlap—either an offer of an extended discovery period by the predecessor insurer, or prior acts coverage by the successor insurer—for an additional premium. This was the situation presented in *First Alabama Bank*, and indicates the correctness of that result.

This case, however, presents a third possibility, in which the claims made insurer follows a period of no coverage at all. In this case, requiring prior acts coverage would go beyond making the claims made policy a *de facto* occurrence, making the insurer a guarantor of coverage for the heedless, inattentive, or uninsurable. If this were the true intent of Alabama's public policy regarding insurance, the uninsured would strive mightily to have that state's law chosen to interpret the terms of their next policy. The court finds that Alabama law does not require dismissal of any of the counts of the insurers' counterclaim.

## II. Waiver and Estoppel

BGA next argues for dismissal of portions of the counterclaim alleging noncoverage on grounds other than the lack of prior acts coverage, based on Alabama's law of waiver. Since this argument seeks to prevent the insurers' assertion of their rights under the terms of the policies based on their own actions, rather than override those terms, this is not a situation in which Alabama law applies. This argument is therefore not available to BGA.

■ Illinois law does provide BGA with a basis for asserting that the counterclaim should be dismissed in its entirety. An insurer in Illinois faced with a claim from an insured, has three choices for action: it can immediately seek a declaratory judgment of non-coverage, provide a defense under a reservation of its right to contest coverage later, or completely refuse to do either, at the peril of being found in breach of its duty to defend. *Insurance Corp. of Ireland v. Board of Trustees of Southern Illinois University*, 937 F.2d 331, 337 (7th Cir.1991); *Insurance Company of Illinois v. Markogiannakis*, 188 Ill.App.3d 643, 136 Ill.Dec. 307, 312, 544 N.E.2d 1082, 1087 (1 Dist.1989). If Ranger is found to have breached its duty to defend, it is estopped from later asserting any defenses to coverage under the policy. *Markogiannakis*, 136 Ill.Dec. at 312, 544 N.E.2d at 1087; *LaRotunda v. Royal Globe Insurance Co.*, 87 Ill.App.3d 446, 42 Ill.Dec. 219, 225, 408 N.E.2d 928, 934 (1 Dist.1980).

■ However an insurer cannot avoid estoppel by seeking a declaratory judgment at its leisure. As the court in *Reis v. Aetna Casualty & Surety Co.*, 69 Ill.App.3d 777, 25 Ill.Dec. 824, 828, 387 N.E.2d 700, 704 (1 Dist.1978), stated, "a liability insurer in doubt over whether to defend its insured, cannot simply stand on the sidelines and wait until the tort action is complete before contesting the question of coverage." Hence, an insurer is estopped from asserting policy exclusions or defenses in a declaratory judgment action asserted by the insured if it fails to secure a declaratory judgment before trial or settlement of the underlying action. *Unigard Insurance Co. v. Whitso, Inc.*, 195 Ill. App.3d 740, 142 Ill.Dec. 709, 711, 553 N.E.2d 59, 61 (1 Dist.1990); *see also, e.g. National Cycle, Inc. v. Savoy Reinsurance Co. Ltd.*, 938 F.2d 61, 63 (7th Cir.1991). The insurer need not actually secure the declaratory judgment, but must have filed it. *Markogiannakis*, 136 Ill.Dec. at 312, 544 N.E.2d at 1087. For example, the insurer in *Markogiannakis* fulfilled its obligations under Illinois law by filing a declaratory action within one month of its denial of coverage. *Id.*

Application of this principle argument requires a comparison between *Central Mutual Insurance Co. v. Kammerling*, 212 Ill.App.3d 744, 156 Ill.Dec. 826, 571 N.E.2d 806 (1 Dist.

1991), and *Unigard.* In *Kammerling,* the Illinois First District Appellate Court found an insurer was estopped from asserting its coverage defenses when it waited to file a declaratory action ten months after it had notice of the claim, and several months after it had notice of a potential settlement of the underlying litigation. *Kammerling,* 156 Ill. Dec. at 830, 571 N.E.2d at 810. In *Unigard,* on the other hand, the same appellate district found that an insurer who filed a declaratory action some four months after receiving notice of a claim was not estopped from asserting its policy defenses because it filed its declaratory action three months prior to settlement of the underlying lawsuit. *Unigard,* 142 Ill.Dec. at 710–11, 553 N.E.2d at 60–61.

In the court's judgment, the most important factor in these cases is not the raw chronological delay in an insurer's filing a declaratory judgment action, but whether the insurer waited until trial or settlement was imminent. In this case, the insurers denied coverage on September 20, 1988 and filed their declaratory judgment action on October 10, 1989, a delay of over one year. However trial of the underlying case is still some months away as of the date of this opinion, almost three years later, and settlement was obviously not in the offing at the time the insurers filed suit either.

The *Kammerling,* found it appropriate to quote from legendary sportswriter Grantland Rice to describe the conduct the law expects of an insurer:

> After the game is over and begins to wane it isn't whether you won or last that counts but how you played the game.

*Kammerling,* 156 Ill.Dec. at 830, 571 N.E.2d at 810. The court finds the outcome of this case to be governed by an anonymous, yet no less pithy quote from the world of sports: "No harm, no foul."

### CONCLUSION

For the foregoing reasons, BGA's motion to dismiss the counterclaim of the insurers is denied.