**ALLIED FIDELITY INSURANCE CO.,**
Petitioner–Appellant,

**Robert L. Davis, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 2–680A200.

Court of Appeals of Indiana,
First District.

Dec. 23, 1980.

John A. Perrin, Auberry, Stanek & Perrin, Indianapolis, for appellants.

Theo. L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for plaintiff–appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Allied Fidelity Insurance Co. (Allied), surety on the defendant's bail bond, appeals the denial of its petition to set aside the judgment upon the forfeiture of the bond.

### STATEMENT OF THE FACTS

On July 17, 1979, the defendant was arrested and jailed on a charge of battery. On July 20, 1979, Allied filed bond in the amount of $5,000 by its agent and attorney–in–fact Ivan Miller. Arraignment was set for August 7, 1979, and the clerk was directed to notify the surety on the bond. The clerk's certificate indicates a copy of the order was mailed first class to either Ivan Miller or Allied, although to which one it was in fact mailed is not clear.

The defendant failed to appear on August 7, 1979; the trial court declared the bond forfeited and directed the clerk to send a copy of the order by certified mail "to the surety on the bond, Allied Fidelity Insurance Co." The clerk's certificate indicates that on either August 9 or August 10, 1979, a copy of the order was sent by certified mail "to the addressee named thereinabove at the address shown thereon." As noted above, the order refers only to "the surety on the bond, Allied Fidelity Co.," and provides no address. However, in the upper left corner of the certificate of mailing the following handwritten entry appears:

"Ivan Miller
1120 Hillcrest
W. Laf".

A certified, return receipt shows a letter was received on August 11, 1979, by the listed addressee, Ivan Miller.

On February 13, 1980, the trial court, being duly advised the 180–day period had elapsed, entered judgment against the surety for the amount of the bond and directed the clerk to notify the state commissioner of insurance. On March 7, 1980, Allied filed a petition to set aside the judgment on the ground of lack of notice of forfeiture; the petition was denied.

## ISSUE

■ The appeal raises one issue: Whether a judgment upon an order of forfeiture of a recognizance bond can be entered against a corporate surety when notice of the order of forfeiture was mailed only to the surety bondsman and not to the insurer.

## DISCUSSION

Allied is an insurance company which is qualified generally to transact surety business and specifically to transact bail bond business in this state. Ivan Miller is a surety bondsman who has been appointed by Allied by power of attorney to execute or countersign bail bonds for Allied in connection with judicial proceedings.

The bond filed by Ivan Miller was one provided by Allied to its surety bondsmen. At the top of the bond Allied had printed a power of attorney authorizing the surety bondsman to execute the bond on its behalf. Below, the bond read, in pertinent part:

"Know All Men By These Presents:

THAT we, _Robert L. Davis_ as principal and ALLIED FIDELITY INSURANCE CO., as surety, jointly and severally acknowledge ourselves bound to the State of Indiana in the sum of _$5,000_ dollars. If _Robert L. Davis_ shall appear . . . then this recognizance shall be void, else to remain in full force.

If the above–named defendant shall not appear at any time fixed in this bond, the court shall thereupon declare this bond to be forfeited and notice of such forfeiture shall be mailed to ALLIED FIDELITY INSURANCE CO., the surety, at 6320 North Rucker Road, Post Of-

fice Box 20112, Indianapolis, Indiana 46220 and _Ivan · L. Miller_ in _Tipp._ County, and State of Indiana. And if the surety hereon shall not produce said defendant within one–hundred eighty ´(180) days after the mailing of such notice, pay all costs and satisfy the court that the defendant's absence was not with its connivance or consent, then and in that event, the court shall enter judgment against such surety and certify said judgment to the clerk for record."

The bond was signed by the defendant and Allied by Ivan Miller as attorney–in–fact.

In the case at bar it is not disputed that the defendant failed to appear and the bond was properly declared forfeited. However, Allied claims it was not properly notified of the forfeiture and therefore it justifiably failed to take those actions necessary to produce the defendant or excuse his absence. State argues the notice sent to and received by Ivan Miller, Allied's surety bondsman and attorney–in–fact, was proper and sufficient.

Allied contends its bond is in complete compliance with statutory requirements both in form and execution. The bond shows the address of the insurer and provides blanks in which the surety bondsman lists his name and county of residence. Allied further contends that the statutory directive to mail notice of such forfeiture to the _addresses_ indicated in the bonds is unequivocal and requires notice, in this case, to both the insurer and the surety bondsmen.

Allied cites _Starkie v. State_, (1943) 113 Ind.App. 589, 49 N.E.2d 968, in support of its argument. In construing the bail bond statute then in effect with regard to notice,[1] Judge Draper stated at page 594, 49 N.E.2d 968, of the official reporter:

"The statute enjoins upon the clerk the duty of mailing notice of forfeiture to the sureties to the addresses indicated in the bonds. Only after that has been done by the clerk and the sureties have thereafter failed to satisfy the requirements of the

---

1. Acts 1927, ch. 132, § 2. See discussion, _infra_.

statute may a judgment be entered against them. The reason is apparent. It is intended that they shall to the extent indicated in the statute have notice of the forfeiture, and thus have an opportunity to produce the defendant in court, pay the costs and satisfy the court that the defendant's absence was not with their consent or connivance and thus save themselves from loss. The statute is somewhat drastic in its operation and the full measure of protection afforded by it to sureties must be accorded to them before a judgment may be entered against them according to its terms. Unless there has been a compliance with its provisions, a judgment based thereon is erroneous. *Knecht et al. v. State of Indiana, supra.* See also *Lowery v. State Life Insurance Company* (1899), 153 Ind. 100, 54 N.E. 422."

In its brief State distinguishes *Starkie, supra,* asserting the decision does not determine what notice is sufficient, but only that no notice whatsoever is certainly insufficient. State argues that "in all probability" the docket sheet showed only Ivan Miller's address, and, "as this Court well knows," a clerk works from the docket sheet rather than from file–stacked drawers. State further argues it is the "accepted rule" for a court clerk to present matters of insurance to the agent rather than the home office of the company. State's sole authority is *Georgia Life Insurance Company v. Otter Creek Coal Company,* (1918) 67 Ind.App. 277, 119 N.E. 151, for the proposition that notice to an insurance company's agent is sufficient. Finally, State argues that although the clerk has the duty to mail notice of forfeiture to the addresses indicated in the bonds, "the statute does not say *each* address."

The disposition of this case requires a brief, historical analysis of the statutes which have governed bail, or recognizance, bonds. The first statute prescribing a standard form for recognizance bonds was ACTS 1905, ch. 169, § 82:

"Recognizances for the appearance of prisoners shall, in all cases, be taken with freehold surety, or be secured by a surety company, and shall be substantially in the following form:

We, A.B. and C.D., jointly and severally acknowledge ourselves bound to the State of Indiana in the sum of . . . . . . . . . dollars, if the said A.B. shall not appear on the . . . . day of . . . . ., 19. . . ., in . . . . . . . . . . court, to answer a charge of (here state the offense) at the county of . . . . . . . . and State of Indiana, and abide the judgment of said court."

In ACTS 1927, ch. 132, § 2, the General Assembly made minor amendments to the above language and added the following to the recommended bond form:

"If the above named defendant shall not appear at any time fixed in this bond, the court shall thereupon declare this bond to be forfeited *and notice of such forfeiture shall be mailed to C.D., the surety,* at . . . . . . . . . . . *and* . . . . . . . . . . *in* . . . . . . . . . . . . . . *county and State of Indiana. And if the surety hereon shall not produce said defendant* within ten days after the mailing of such notice, pay all costs and satisfy the court that the defendant's absence was not with his connivance or consent, then and in that event *the court shall enter judgment against such surety* and certify said judgment to the clerk for record." (Emphasis added.)

Section 2 also provided standard form for affidavits which would show the name, total assets, and freeholdings of each personal surety. Section 6 of the act prescribed the following qualifications for sureties:

"One surety on every such recognizance must be a resident freeholder of the county in which the prosecution is pending, and the surety or sureties must be worth at least double the sum to be secured, and must have property in this state, liable to execution, equal to the sum to be secured; and when two or more sureties are offered to the same recognizance, they must have in the aggregate the qualifications prescribed in this section: *Provided,* That whenever by the laws of this state a

surety company is authorized to become surety on recognizance bonds, such surety company may be accepted as sufficient surety on any such bond. The recognizance shall be in form substantially as provided in section 82, conditioned for judgment on ten days' notice to the surety."

Section 2 prescribed the following requirements for notice of forfeiture:

"The sureties of such bonds shall be worth at least double the indemnity in the bond and in case the defendant shall not appear as provided in the bond, the court shall thereupon declare the bond forfeited and the clerk shall mail notice of such forfeiture to the addresses indicated in the bonds, and if the bondsmen do not produce the defendant within ten days after such mailing and pay all costs and satisfy the court that defendant's absence was not with the consent or connivance of the sureties, the court shall at once enter judgment, without pleadings and without change of judge or change of venue, against the bondsmen for the amount of the bond and the clerk shall at once record the judgment."

A fair reading of the above statutes indicates the General Assembly anticipated two types of sureties upon bail bonds: personal and corporate. It further indicates that although the standard bond appears to have been designed to record the obligation of a single, personal surety, the General Assembly anticipated that in some cases a number of personal sureties might execute separate bonds upon a single recognizance.[2] Thus, regarding notice of forfeiture, we observe the standard form required notice to "the surety,"[3] while the general statutory language recognized the possibility of multiple personal sureties and therefore required the clerk to send notice to the "addresses in the bonds" so that all of the bondsmen could

attempt to produce the defendant, or excuse his absence, and avoid a judgment against their property.

ACTS 1961, ch. 263, constituted the Bail Act of 1961, an act governing the transaction of the bail bond business and authorizing the administration of its provisions by the state commissioner of insurance. *See* IND.CODE 35–4–5–1 *et seq.*

The act opened with a definitional section in which the General Assembly established the terminological foundation necessary to any comprehensive statutory enactment. The new act recognized three distinctive types of bail bondsmen: property, professional, and surety. A surety bondsman was defined as "any person who has been approved by the commissioner and appointed by an insurer by power of attorney to execute or countersign bail bonds for the insurer in connection with judicial proceedings and receives or is promised money or other things of value therefor."

Under the provisions of the act every insurer was required to furnish to the commissioner of insurance an annual listing of all the surety bondsmen it had appointed. § 27. Every surety bondsman was required to register his license and file a certified copy of his appointment by power of attorney from each insurer he represented as agent with the sheriff and clerk of court of the county in which he resided, and present said credentials in any other county in which he executed a bond. § 34.

The act recognized three types of sureties:

"Each and every surety for the release of a person on bail shall be qualified as:

(1) *An insurer* and represented by a surety bondsman or bondsmen; or

(2) *A professional bondsman* properly qualified and approved by the commissioner; or

---

2. The portion of bond form enacted in 1905 was clearly intended to be used by both personal and corporate sureties. The 1927 addition to the form appears to have been designed for use by a personal surety. We note § 6 reiterated that a corporate surety's bond need only be in

substantial compliance with the standard bond form.

3. We further observe the terms "surety" and "bondsman" are used interchangeably in these statutes, a form of usage foreclosed by the Bail Act of 1961. See discussion, *infra.*

(3) *A natural person* who has reached the age of twenty–one years, a citizen of the United States and a bona fide resident of Indiana for a period of one year immediately last past and who holds rec- .ord title to property in Indiana acceptable to the proper authority approving the bail bond." (Emphasis added.)

ACTS 1961, ch. 263, § 4.

It is important to note that, by the express terms of the statute, an insurer is a surety, but not a bail bondsman, and his surety bondsman is a bail bondsman, but not a surety. This distinction becomes important as we attempt to interpret other sections, such as those dealing with bond forfeiture, which follow.

With regard to forfeiture, the act provided:

"If there is a breach of the undertaking, the court before which the cause is pending shall make a record thereof and shall declare the undertaking, and any money or bonds that have been deposited as bail, forfeited: Provided, however, *the bail bondsman or the insurer* shall have had legal notice of the trial or hearing of defendant at least seventy–two hours before required appearance of defendant, unless the appearance is scheduled within that time from the execution of bond. Upon said undertaking being thus forfeited, the clerk of the trial court shall immediately transmit the undertaking to the clerk of the circuit court of the county in which said undertaking was filed." (Emphasis added.)

ACTS 1961, ch. 263, § 8. With regard to notice of such forfeiture prior to judgment the act provided in part:

"In the event of the forfeiture of a bail bond the clerk of the trial court shall notify the *bondsman* on said bond who shall have the right, within thirty (30) days from the date of such notice, to file with the court a motion to set aside the order of forfeiture, which motion shall contain the grounds upon which it relies." (Emphasis added.)

ACTS 1961, ch. 263, § 10.

Section 8 evidences the General Assembly's appreciation for the definitional distinctions it had drawn between insurers and bail bondsmen. By its terms, notice of the date of the hearing was required at least seventy–two hours in advance, and was to be given to either a bail bondsman, i. e. a property, professional, or surety bondsman, or an insurer. Section 10 evidences the General Assembly's appreciation of one of the realities of the bail bond business, i. e. the bondsman and his runners, not the insurer, have the primary task of bringing the defendant into court.

Unfortunately, the Bail Act of 1961 did not contain an updated form for bail bonds. The form provided in ACTS 1905, ch. 169, § 82, as amended by ACTS 1927, ch. 132, § 2, continued in effect. The less precise use of the terms "surety" and "bondsman" in that statute caused some confusion regarding the notice requirement for two reasons:

First, according to the language of the bond, notice of forfeiture was to be mailed to the surety rather than to the bondsman, as required by § 10. Secondly, the bond required notice to the surety while the statute assumed the bondsman would produce the defendant.

In ACTS 1969, ch. 241, § 20, the General Assembly repealed ACTS 1905, ch. 169, § 82. However, the standard bond and affidavit forms were reenacted without major change in ACTS 1969, ch. 241, § 5, as an amendment to ACTS 1961, ch. 263, § 10. All of the original language of § 10 was deleted.

By way of ACTS 1969, ch. 241, § 7, the notice requirement previously included in § 82 became a new section, § 10b. The General Assembly deleted the language providing that the sureties of such bonds shall be worth at least double the indemnity in the bond, thus the new section began:

"In case the defendant shall not appear as provided in the bond, the court shall thereupon declare the bond forfeited and the clerk shall mail notice of such forfeiture to the addresses indicated in the bonds...."

As a result of above amendments the forfeiture notice requirement was totally obfuscated. The original language of § 10 requiring notice to the bondsman was deleted. Only the "surety" language of the bond and the decontextualized "addresses in the bonds" language of the statute remained. It was in this statutory context that the case at bar arose.

Before stating our decision we would also note that as of October 1, 1980, the General Assembly has eliminated property and professional bondsmen from the statutes. ACTS 1980, P.L. 203, § 1, now provides for a single type of bail bondsman, that being a surety bondsman. Furthermore, as of October 1, there are only two types of sureties: insurers represented by surety bondsmen and personal sureties, i. e. citizens of this state who are related to the defendant and own real or personal property located in this state. ACTS 1980, P.L. 203, § 2. Nevertheless, as of October 1, 1980, the bond form is the same in all material aspects as when enacted in the first half of this century; the "addresses in the bonds" language also remains.

In conclusion, with regard to personal sureties, we are of the opinion that the standard bond form is practicable and that the requirement of notice "to the addresses indicated in the bonds" is appropriate in those instances where a number of personal surety bonds are filed upon a single recognizance. With regard to corporate sureties, we are of the opinion that the standard bond form is somewhat outdated and the notice requirement is ungainly in application. We do not think the General Assembly intended that only the name of the "C.D., surety," i. e. the insurance company, should be listed in the bond. Given the fact that the surety bondsman, as an agent for the insurance company, collects the premium, executes the bond, and, with the help of his runners, sees to the appearance of the defendant, the surety bondsman's name and address might properly appear in the bond.

## DECISION

Allied's bond provides that notice of forfeiture "shall be mailed to ALLIED FIDELITY INSURANCE CO., the surety, at 6320 North Rucker Road, Post Office Box 20112, Indianapolis, Indiana 46220 and Ivan L. Miller in Tipp. County, and State of Indiana." The clerk of court mailed notice to Ivan Miller, the surety bondsman. This appeal raises the issue of whether such notice was sufficient.

■ As shown above, the General Assembly authorized the administration of the provisions of the Bail Act of 1961 by the commissioner of insurance. Both insurers and surety bondsmen are licensed by the commissioner. The insurers must identify their agents to the commissioner; the agents must identify their principals to the county sheriffs and clerks of court. The insurers deal primarily with the commissioner and their bondsmen; the bondsmen deal directly with the defendants and the courts. In short, the insurer–surety bondsman relationship is nothing more or less than an agency relationship. As State argues and Allied concedes, absent specific statutory requirements, notice to an insurance company's agent is sufficient. *Georgia Life Insurance Company, supra.* We find no specific statutory requirement that notice of forfeiture must be mailed to the insurer in addition to, or to the exclusion of, the surety bondsman. Notice of forfeiture must be mailed, of course, to one or the other, or the entry of the judgment would be improper. *Starkie, supra.* In the case at bar the surety bondsman received notice of the forfeiture; we find that notice sufficient.[4]

Affirmed.

ROBERTSON, P. J., and RATLIFF, J., concur.

4. Following the entry of the judgment Allied filed a petition to set it aside. The petition was summarily denied. Allied argues the trial court erred in failing to hold a hearing, citing Ind. Rules of Procedure, Trial Rule 60(D).

The ground for relief asserted in the petition was the lack of notice to Allied. Accepting all

of the facts asserted in the petition as true, the ground for relief constituted an issue of law, an issue to which we have given ample considera-tion. Allied's interests were in no way preju-diced by the lack of a hearing on the matter.