INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Plaintiff and Counterdefendant-Appellant, v. PROTECTIVE INSURANCE COMPANY, Defendant and Counterplaintiff-Appellee (John Reid *et al.*, Defendants).

First District (5th Division) No. 1—90—3326

Opinion filed March 13, 1992.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, John F. Brennan, and Edward M. Kay, of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Richard M. Clark, and Christine L. Olson, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

The Insurance Company of the State of Pennsylvania (Pennsylvania) appeals from an order of the circuit court which granted summary judgment in favor of Protective Insurance Company (Protective) and awarded Protective $1 million in an insurance coverage dispute. For reasons that follow, we affirm the order of the circuit court.

John Reid and Sandra Reid (the Reids), doing business as R&D Trucking, owned a Hendrickson tractor, which was leased to Hamilton Trucking Company (Hamilton) for 30 days pursuant to an agreement dated March 24, 1986. The lease provided that, in addition to the tractor, the Reids and R&D Trucking were to supply Hamilton with a driver for trips contracted for; that these drivers were employees of the Reids and R&D Trucking and under their exclusive direction and control; that Hamilton's placards were to be returned at the conclusion of any trip; and that the Reids were to carry adequate insurance, including "bobtail insurance."

On April 4, 1986, John Reid (Reid), while operating the Hendrickson tractor leased to Hamilton, was involved in a vehicular accident with a car driven by Dorothy Caballero (Caballero). According to Reid's deposition, the accident occurred on a Friday, not while Reid was transporting goods for Hamilton, but when Reid was taking the tractor for servicing in preparation for a trip scheduled for the following Monday. At the time of the accident, however, Hamilton's identification label and ICC permit numbers were displayed on the tractor.

On May 2, 1986, Caballero filed a negligence action in the circuit court of Cook County naming Hamilton and John Reid as defendants. In this initial complaint Caballero alleged that Reid was the employee and agent of Hamilton and that as a result of their negligent acts or omissions she was injured. The complaint was amended to include additional defendants, including John and Sandra Reid, d/b/a R&D Trucking. In this amended complaint Caballero alleged that at the time of the accident Reid was the employee and agent of both Hamilton and R&D Trucking. The amended complaint further alleged that Caballero had been injured as a result of various negligent acts or omissions of both of these defendants.

Protective insured the Reids and R&D Trucking under a policy of insurance, policy No. SFB41723, effective October 3, 1985, through October 3, 1987. This policy provided what is known as "bobtail" insurance, which covered the Hendrickson tractor owned by the Reids and R&D Trucking. The policy excluded coverage "(1) [w]hile the vehicle is used to carry property for any business; (2) [w]hile the insured

vehicle is being used in the business of any person or organization to whom the vehicle is rented or while on use for such purpose."

On May 1, 1986, prior to the filing of the Caballero complaint, Protective notified Hamilton of the accident and explained that because the accident occurred at a time when Hamilton's identification and ICC permit numbers were displayed on the leased tractor, Hamilton was obligated under Illinois law to provide insurance coverage. Thus, Protective tendered the defense of Reid to Hamilton and its insurance carrier. A second tender of defense was made on June 19, 1986, after Caballero filed her complaint.

Pennsylvania insured Hamilton under a policy of insurance, *i.e.*, policy No. TA9980698 effective from March 1, 1985, through March 1, 1987, and pursuant to this policy it undertook the defense of Hamilton in the negligence action. Pennsylvania's policy provided that an insured included:

> "4. The owner or any one else from whom you hire or borrow a covered auto which is not a trailer is an insured while the covered auto:
>
> a. is being used exclusively in your business; and
>
> b. is being used pursuant to operating rights granted to you by a public authority."

On October 7, 1986, Pennsylvania rejected the tender of defense, refusing to defend Reid based upon its belief that Reid was not an insured under the terms of its policy with Hamilton. Consequently, Protective undertook the defense of the Reids and R&D Trucking. It wasn't until September 16, 1988, that Pennsylvania filed a declaratory judgment action, seeking a declaration of its rights and obligations as to the Reids and R&D Trucking under the terms of its policy of insurance with Hamilton.

On December 9, 1988, Hamilton moved to stay the declaratory judgment proceedings on the basis that the declaratory judgment action would address facts upon which recovery was predicated in the underlying action and that these issues should not be resolved in the declaratory judgment action to the detriment of the parties in the underlying suit. This motion was apparently not ruled upon, and while the declaratory action still pended, the underlying action was settled. Pennsylvania contributed $3 million on behalf of Hamilton, and Caballero signed a release for Hamilton and others dated June 19, 1989. Protective contributed $1 million on behalf of the Reids and R&D Trucking, and Caballero signed a release for them dated July 19, 1989.

On October 16, 1989, Protective filed a counterclaim in the declaratory action, alleging that Reid was an insured under Pennsylvania's policy and that, at the time of the accident, the tractor was being used exclusively in Hamilton's business. On June 19, 1990, Protective moved for summary judgment on its counterclaim for declaratory relief. At this time Protective raised the question of whether Pennsylvania should be estopped from denying that Reid and R&D Trucking were covered under its policy due to Pennsylvania's failure to fulfil its obligation to provide for the defense of Reid and R&D Trucking in the underlying action.

At a hearing on the summary judgment motion, the circuit court found that the alleged policy defenses raised a "myriad of factual issues" which would preclude summary judgment on the question of whether the Reids and R&D Trucking were covered under the terms of Pennsylvania's policy. Nevertheless, the circuit court granted Protective's motion for summary judgment based upon its determination that Pennsylvania was estopped from denying coverage because it had failed to fulfil its obligations by either raising its various defenses to coverage in a promptly filed declaratory action or defending under a reservation of rights. Judgment was entered in Protective's favor in the amount of $1 million, the amount Protective had contributed to the settlement of the underlying suit. The circuit court also included a Supreme Court Rule 304(a) ruling in its order. 134 Ill. 2d R. 304(a).

Pennsylvania appeals this order, contending that estoppel does not apply in this case because (1) a declaratory judgment action was brought in a timely fashion in that it was filed prior to settlement of the underlying action; (2) the declaratory action was premature prior to the resolution of the underlying suit due to the commonality of issues; and (3) Pennsylvania could not have assumed the defense of Reid and R&D Trucking due to a conflict of interest. Consequently, Pennsylvania contends that this court should reverse the decision of the trial court and remand for a hearing on the question of whether Reid and R&D Trucking were covered insureds under the terms of the policy with Hamilton.

Protective denies that Pennsylvania's declaratory judgment action was timely filed or that the declaratory action was premature, nor does Protective agree that a conflict of interest existed which precluded Pennsylvania from representing Reid. Thus, Protective argues that the trial court properly granted summary judgment on the basis of estoppel. Alternatively, however, Protective argues that this court could determine that, under the circumstances of the case, Pennsylva-

nia's policy of insurance provided coverage for Reid and the Protective policy did not, and affirm the trial court on that basis.

For the following reasons, we affirm the order of the trial court.

 ██ It is well-established law in Illinois that an insurer's duty to defend an action brought against an insured is triggered when a filed complaint alleges facts which are within, or potentially within, the coverage of the policy, without regard to whether or not the allegations are groundless, false or even fraudulent. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 442 N.E.2d 245; *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335; *Central Mutual Insurance Co. v. Kammerling* (1991), 212 Ill. App. 3d 744, 571 N.E.2d 806.) If an insurer is uncertain as to its duty to defend, it must either seek a declaratory judgment as to its obligations and rights prior to trial or settlement of the underlying action or defend under a reservation of rights, or both. (*Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.* (1983), 122 Ill. App. 3d 301, 461 N.E.2d 471.) If the insurer does not elect one of these courses of action and refuses to defend an insured who ultimately incurs an adverse judgment, the insurer will be estopped from raising policy exclusions or noncoverage as a defense in any subsequent action brought to recover policy proceeds. See *Central Mutual Insurance v. Kammerling,* 212 Ill. App. 3d at 748; *Fidelity Casualty Co. v. Envirodyne Engineers, Inc.,* 122 Ill. App. 3d at 306.

Both parties concede these settled principles of law. However, Pennsylvania contends that it complied with the letter of the law in that it filed a declaratory judgment action prior to the time that the underlying action was settled. Therefore, it argues, estoppel should not apply. In support of this position, Pennsylvania cites this court's decision in *Unigard Insurance Co. v. Whitso, Inc.* (1990), 195 Ill. App. 3d 740, 553 N.E.2d 59, for the proposition that estoppel will not apply where the insurer brings a declaratory judgment action any time prior to the settlement of the underlying action. We do not agree with this interpretation of the *Unigard* decision.

In *Unigard,* Gutierrez, an employee of Whitso, was injured in 1981 during the course of employment. Gutierrez filed suit against two separate manufacturers of the machine involved in the accident and the manufacturers, in turn, sued Whitso for indemnity and contribution. Whitso was insured by three different carriers. The worker's compensation carrier, Casualty Insurance Company, assumed the defense of Whitso in the third-party actions. In September 1985 American States, the excess liability carrier, notified Unigard, which insured Whitso under a comprehensive business liability policy, "to assume its

duties pursuant to its policy, namely to 'pay any third-party judgment which may or might be entered' against Whitso." (195 Ill. App. 3d at 741.) Unigard responded by denying coverage, noting that a provision within its policy with Whitso excluded coverage for liability based on bodily injury to any employee arising out of employment and indemnification for damages arising out of such injuries. Thus, the underlying complaint, on its face, failed to allege facts which would bring the case within the policy's coverage.

In November 1986 Unigard was notified of settlement negotiations and was asked to participate. Unigard then filed a declaratory judgment action in January 1987, seeking a declaration of its obligation to contribute based upon its policy exclusions. In their answer to the declaratory action, Whitso, American and Gutierrez admitted that the injury occurred in the course of employment, but they contested the applicability of Unigard's policy exclusion to third-party contribution actions. In April 1987 Gutierrez' underlying suit was settled, and in April 1988 Unigard was granted summary judgment in its declaratory action. The award of summary judgment was affirmed on appeal.

The circumstances in *Unigard* are quite different from the circumstances in the case at bar. In *Unigard* the facts alleged in the underlying complaint, which are what determines an insurer's duty to defend the insured, did not fall within, or even potentially within, the policy's coverage. Therefore, Unigard had no duty to defend. Furthermore, in *Unigard* the insurer was never tendered the defense of the insured, but rather was only asked to contribute to the settlement of third-party claims. Under these circumstances, a declaratory action to determine one's coverage liability must be delayed until after the underlying complaint has been resolved. See *Bituminous Casualty Corp. v. Fulkerson* (1991), 212 Ill. App. 3d 556, 571 N.E.2d 256 (an insurer's declaratory action to determine its duty to indemnify its insured is premature if brought prior to the determination of the insured's liability).

In the present case the underlying complaint, as amended, alleged that at the time of the accident Reid was an employee of Hamilton and/or R&D Trucking, that he negligently operated a tractor which was owned by Sandra Reid and R&D Trucking, and that the tractor was leased by Hamilton and displayed Hamilton's identification and ICC permit number. According to the allegations in the complaint and considering the policy definition of an "insured" (cited above), the Reids and R&D Trucking were all insureds, or potentially insureds, within the terms of the policy Pennsylvania provided to Hamilton. Therefore, Pennsylvania became obligated to defend the Reids and

R&D Trucking, or provide for their defense, despite the possibility they might later be found not to be insureds. (See *Associated Indemnity Co. v. Insurance Co. of North America* (1979), 68 Ill. App. 3d 807, 386 N.E.2d 529.) The duty to defend is broader than the duty to pay. Therefore, an insurer can justifiably refuse to defend only when the allegations of the complaint clearly show on their face that the claim is beyond the coverage of the policy. (*Waste Management, Inc. v. International Surplus Lines Insurance Co.* (1991), 144 Ill. 2d 178, 579 N.E.2d 322.) Any doubt will be resolved in favor of the insured. Even if the underlying complaint alleges several theories of recovery against the insured, the duty to defend will arise even if only one theory is within the potential coverage of the policy. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 578 N.E.2d 926.

■ It is important to note that due to the fact that Hamilton's ICC permit number was displayed on the tractor, the question of whether the tractor was being used exclusively in Hamilton's business at the time of the accident was not an issue in the underlying action. (See *Schedler v. Rowley Interstate Transportation Co.* (1977), 68 Ill. 2d 7, 368 N.E.2d 1287; *Occidental Fire & Casualty Co. v. Padgett* (1983), 113 Ill. App. 3d 215, 446 N.E.2d 937 (pursuant to the regulatory scheme set forth by the Interstate Commerce Act, a carrier-lessee whose identification and ICC permit number appear on the leased equipment will be held vicariously liable to the public for the negligent operation of the leased equipment without regard to whether at the time in question the equipment was being used in the business of the lessee).) Therefore, Reid's agency and scope of employment at the time of the accident were not at issue in the underlying action. These issues would more properly be determined in a suit for indemnification or contribution brought against Reid's insurer after liability was determined in the underlying action.

■ But Pennsylvania's obligation to defend was not contingent upon these matters. Once the potential for coverage existed, the duty to defend was imposed. (*Casualty Insurance Co. v. Northbrook Property & Casualty Insurance Co.* (1986), 150 Ill. App. 3d 472, 501 N.E.2d 812.) Because Pennsylvania clearly had a duty to defend the Reids and R&D Trucking, it should have done so under a reservation of rights. It then could have brought a timely declaratory judgment action to determine the extent of its liability under the terms of its policy of insurance with Hamilton.

We agree with the trial court that Pennsylvania's obligation was not satisfied by its defense of Hamilton and the filing of a declaratory

judgment action more than two years after refusing the tender of defense for Reid. (See *Central Mutual Insurance v. Kammerling*, 212 Ill. App. 3d at 748-50 (when no justifiable reason exists for the delay in bringing a declaratory judgment action, estoppel will apply even though the declaratory action is filed prior to settlement of the underlying action).) When the duty to defend is clear, an insurer cannot avoid its obligation and then insulate itself from the imposition of estoppel by an eleventh-hour filing of a declaratory judgment action. Nor can Pennsylvania benefit from the fact that Reid's insurance company fortuitously took over Hamilton's obligation to defend. See *Casualty Insurance Co. v. Northbrook Property & Casualty Insurance Co.*, 150 Ill. App. 3d 472, 501 N.E.2d 812.

Pennsylvania attempts to justify its refusal to defend and its delay in bringing its declaratory judgment action by arguing (1) that a declaratory action would have been premature and (2) that a conflict of interest existed. We find neither of these arguments to have merit.

A declaratory action to determine an insurer's duty to defend will be deemed premature if it must look beyond the allegations of the complaint and if issues crucial to the underlying action would be decided, thereby precluding one or more theories of recovery. (*Thornton v. Paul*, 74 Ill. 2d 132, 384 N.E.2d 335; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24; *State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 430 N.E.2d 641.) If an insurer must go beyond the allegations of the complaint to deny coverage, the insurer may not be permitted to obtain a ruling in a declaratory judgment proceeding prior to the conclusion of the underlying action. However, where, as here, the facts alleged in the complaint bring the matter potentially within the policy's coverage, the duty to defend cannot be denied. As a result of that breach of duty, the insurer will be estopped from denying coverage in any other ancillary proceedings.

We are also unpersuaded by Pennsylvania's contention that estoppel should not be applied because a conflict of interest existed between it and Reid. In cases where a conflict of interest exists between the insurer and the insured, the insurer's obligation to defend is not negated. Although the insurer would not be permitted to participate in the defense because of the conflict, it must fulfil its obligation to provide a defense by reimbursing the insured for the cost of independent counsel. (*O'Bannon v. Northern Petrochemical Co.* (1983), 113 Ill. App. 3d 734, 447 N.E.2d 985.) By the use of the term "reimbursement" one does not mean that the insurer can withhold payment until the underlying action is over. Reimbursement for defense costs should

be provided as they are incurred. (*Gibraltar Casualty Co. v. Sargent & Lundy* (1990), 214 Ill. App. 3d 768.) Therefore, we see no reason to allow an insurer, whose obligation to provide a defense is clear, to avoid the application of estoppel simply because it later claims a conflict of interest existed, especially when this basis for denying the insured a defense was not told to the insured and the insurer made no offer to advance funds to pay for alternative representation in an effort to meet its obligation to provide a defense.

For all the reasons stated above, we find that the trial court properly granted summary judgment in favor of Protective and entered judgment against Pennsylvania based upon the equitable principle of estoppel. We affirm the order of the circuit court and the award of $1 million to Protective.

Affirmed.

McNULTY, P.J., and GORDON, J., concur.