Robert S. McCASLIN and Beverly McCaslin, Appellants–Plaintiffs,

v.

UNDERWOOD MACHINERY TRANSPORT, INC. and Phillip B. Cambe, (Not Participating in Appeal)

v.

INSURANCE COMPANY OF the STATE OF PENNSYLVANIA, Appellee–Defendant.

No. 49A02–9201–CV–38 [1].

Court of Appeals of Indiana, First District.

July 29, 1992.

1. This case was transferred into this office on June 15, 1992 by order of the Chief Judge.

W.F. Conour, Rex E. Baker, Conour–Doehrman, Indianapolis, for appellants-plaintiffs.

Steven A. Johnson, Merrillville, for appellee-defendant.

ROBERTSON, Judge.

Robert S. and Beverly McCaslin appeal the trial court's dismissal of their motion for proceedings supplemental against garnishee-defendant Insurance Company of the State of Pennsylvania.  The McCaslins seek to attach the personal trucking liability policy (with a policy limit of $500,000.00)

of truck driver Phillip Cambe issued by Pennsylvania. The McCaslins have obtained judgments against Cambe in the aggregate amount of $3,750,000.00 of which $1,750,000.00 remains unpaid. We address four (4) of the reasons Pennsylvania propounds to justify the denial of coverage and reverse.[2]

## FACTS

The facts are undisputed. On Friday, September 9, 1988, truck driver Phillip Cambe was operating his tractor-trailer rig under a permanent lease agreement with his carrier, Underwood Machinery Transport, Inc. Cambe picked up a machine in Illinois for delivery in Greenwood, Indiana. After delivering the machine, Cambe obtained a release number terminating his lease trip and began to drive his empty tractor-trailer rig to his home in Valparaiso, Indiana for the weekend. He was not required to contact the Underwood dispatcher for a new assignment until the following Monday morning. There is no dispute that Cambe's trip home was a "bob-tail" trip, that is, one in which Cambe was not carrying a load or otherwise under the dispatch of his carrier.

On the trip home, Cambe's truck collided with a pick-up truck driven by Robert McCaslin. McCaslin suffered severe permanent crippling injuries as a result of the accident. The next day, Cambe reported the collision to Underwood. On the following Monday, September 12, 1988, Cambe reported the collision to the insurance agency that sold the Pennsylvania policy and also to Transportation Services, Inc.

The McCaslins sued Cambe and Underwood and obtained judgments in the aggregate amount of $3,750,000.00 against Cambe and Underwood jointly and severally. Underwood's insurers, the Protective & Lexington Insurance Companies, paid the McCaslins the limit of its policy in the amount of $2,000,000.00. Thus, the judgments remain unsatisfied in the amount of $1,750,000.00.

On January 29, 1991, the McCaslins filed the present motion for proceedings supplemental seeking to attach and execute against Cambe's personal trucking liability insurance policy issued by Pennsylvania which has a policy limit of $500,000.00. Cambe assigned his rights in the Pennsylvania policy to the McCaslins. The trial court dismissed the McCaslins' action and this appeal ensued.

Additional facts are supplied as necessary.

## DECISION

At the outset, we will set out the following discussion found in *Reeves v. B & P Motor Lines, Inc.* (1986), 82 N.C.App. 562, 346 S.E.2d 673, which we believe will be helpful in understanding the relationships between truck drivers, their lessee-motor carriers, and insurance companies. We note that the information contained in *Reeves* is consistent with the assertions of both parties in the present case. In *Reeves*, the North Carolina court noted that:

A 'bob-tail' in trucking parlance is simply a tractor without a trailer. However, for insurance purposes, the term takes on a more complex meaning. Disputes over 'bob-tail' insurance coverage in other cases have centered on whether the driver and tractor were 'in the business of' the lessee-motor carrier at the time of the accident. If so, 'bob-tail' insurance is *not* applicable. A case in point in this jurisdiction is *McLean Trucking Company v. Occidental Fire & Casualty Company of North Carolina and Garland L. Wright,* 72 N.C.App. 285, 324 S.E.2d 633, *disc. rev. denied,* 313 N.C. 603, 330 S.E.2d 611 (1985). In *McLean,* the lessee-motor carrier sought to establish that a 'bob-tail' policy endorsement afforded coverage to the lessor-independent contractor for claims arising out of an acci-

---

**2.** We need not address the issue of whether Cambe's personal trucking liability policy provides excess coverage above the coverage provided by Cambe's carrier's liability insurance policy. The McCaslins' judgments will remain unsatisfied after the policy limits of both policies have been exhausted. Therefore, the matter of which policy is primary is of no moment.

dent occurring after the lessor had returned to the point of origin but before he had reached his own home. We held that the lessor was not 'in the business of' the lessee-motor carrier at the time of the accident under the terms of the 'bob-tail' endorsements, and that the policy therefore afforded coverage. *McLean*, 72 N.C.App. at 292, 324 S.E.2d at 637.

\*      \*      \*      \*      \*      \*

'Bob-tail' insurance applies only in very limited circumstances. For this reason, 'bob-tail' premiums are considerably lower than general liability premiums. Lessees, by I.C.C. regulation, must carry sufficient general liability insurance to cover their lessors whenever they are operating 'in the business of' the lessee. In order to protect themselves from exposure to liability when their lessors are *not* acting 'in the business of' the lessee-motor carriers, the latter require their lessors to purchase nontrucking use or 'bob-tail' insurance. Often, but not exclusively, this insurance is maintained by the lessee-motor carrier and charged to the lessor.

346 S.E.2d at 675, 676 (Emphasis in original).

## I.

Whether the McCaslins are bound by the allegation in their complaint in the original lawsuit—that the accident occurred in the scope of Cambe's employment with Underwood—which fact causes coverage under the Pennsylvania bob-tail policy to be precluded because the policy excludes accidents which occur "in the business" of the trucker's carrier?

Cambe's personal trucking liability policy is a "nontrucking" or "bob-tail" policy which was issued to Cambe while his rig was permanently leased to Underwood. A certificate of this insurance was issued to Underwood. Pennsylvania asserts that the policy was intended to insure Cambe's rig for losses incurred while the rig was used for Cambe's own personal use. The pertinent exclusions in the policy read as follows:

No coverage is afforded when the described vehicle(s) is (are)

1. Under carrier direction, control, or dispatch

2. Used to carry property in any business or in route for such purpose.

\*      \*      \*      \*      \*      \*

This insurance does not apply to:

1. A covered auto while used to carry property in any business.

2. A covered auto while used in the business of anyone to whom the auto is rented.

We have held that an accident taking place after a trucker had delivered his load and began bob-tailing home for the weekend was not in the scope of the trucker's employment with his carrier as a matter of law. *Pace v. Couture* (1972), 150 Ind.App. 220, 276 N.E.2d 213. There is no dispute that in the present case, Cambe had been released from dispatch and was in fact "bob-tailing" home for the weekend at the time of his collision with McCaslin. There is no serious assertion that Cambe was acting in the business of Underwood at the time of the accident. Thus, the present situation is precisely the type of accident for which Cambe's Pennsylvania nontrucking bob-tail policy contemplates coverage.

Pennsylvania does not dispute that its policy contemplates coverage under the undisputed present fact situation. Instead, Pennsylvania asserts that the McCaslins are bound by a fact established in the trial below which precludes coverage under the policy under the law of the case doctrine. The McCaslins brought suit against Cambe and Underwood alleging that McCaslin was injured by Cambe while Cambe was acting in the course and scope of his employment with Underwood. Underwood admitted this fact in its answer to the McCaslin's complaint. The judgment was entered against Cambe and Underwood jointly and severally. Underwood's liability insurer paid the McCaslins $2,000,000.00. Therefore, Pennsylvania asserts that under the law of the case doctrine, the McCaslins are bound by the fact established in the earlier proceedings, erroneous or not, that the accident arose out of Cambe's use of the rig

in the trucking operation of his employer, Underwood. As such, coverage is excluded under the bob-tail policy.

■ Facts established at one stage of a proceeding which were part of an issue on which judgment was entered are unalterably and finally established as part of the law of the case and may not be relitigated at a subsequent stage. *Cunningham v. Hiles* (1982), Ind.App., 439 N.E.2d 669. Even if the judgment is erroneous, it nevertheless becomes the law of the case and thereafter binds the parties unless successfully challenged on appeal. *Id.* All issues decided directly or by implication in a prior decision are binding in all further portions of the same case. *Id.*

■ However, the law of the case doctrine is only a discretionary rule of practice. *State v. Lewis* (1989), Ind., 543 N.E.2d 1116. The law of the case doctrine merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on the court's power. *Id.* A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice. *Id.*

■ A hypertechnical application of the law of the case doctrine is not appropriate or just in the present case because the factual "issue" of whether Cambe was acting in the scope of his employment with Underwood at the time of the accident was entirely irrelevant as to Underwood's vicarious liability as Cambe's motor carrier in the original action. We have held that regulations promulgated under the Interstate Commerce Act provide that a motor carrier is vicariously liable for the negligence of its truck driver operating under a lease with the carrier and bearing the carrier's identification and ICC number regardless of whether the accident takes place within the scope of the trucker's employment with the carrier. *Rediehs Express, Inc. v. Maple* (1986), Ind.App., 491 N.E.2d 1006, *trans. denied, cert. denied,* 480 U.S.

932, 107 S.Ct. 1571, 94 L.Ed.2d 762. In *Rediehs,* we held the motor-carrier was liable for its trucker's accident which took place when the trucker had embarked upon an enterprise entirely his own. *Id.* Therefore, the law required Underwood to answer for Cambe's negligence regardless of whether Cambe was acting within the scope of his employment or whether he was bob-tailing home for the weekend at the time of the accident.

Pennsylvania encountered a similar holding in the recent case of *Insurance Company of the State of Pennsylvania v. Protective Insurance Company* (1992), 227 Ill. App.3d 360, 169 Ill.Dec. 630, 592 N.E.2d 117, *appeal denied,* 145 Ill.2d 634, 173 Ill. Dec. 5, 596 N.E.2d 629. Illinois courts have also interpreted the Interstate Commerce Act as providing that a carrier lessee whose identification and ICC permit number appear on the leased rig is vicariously liable to the public for the negligent operation of the leased rig without regard to whether the rig was being used in the business of the carrier lessee at the time of the accident in question. *Id.* Therefore, the Illinois court noted that the fact the plaintiffs alleged that the trucker was acting in the scope of his employment in their complaint was of no moment in determining the respective responsibilities between the truck driver's bob-tail insurer and the carrier's insurer. *Id.* The Illinois court held:

> Therefore, [the truck driver's] agency and scope of employment at the time of the accident *was not at issue* in the underlying action.

169 Ill.Dec. at 635, 592 N.E.2d at 122 (Emphasis ours).

Similarly, we hold Cambe's scope of employment at the time of the accident was not at issue in the underlying action. Therefore, we hold the law of the case doctrine does not apply to preclude coverage under the Pennsylvania bob-tail policy.

■ Moreover, the allegedly established fact, that Cambe was operating within the scope of his employment at the time of the accident, is clearly erroneous and an appli-

cation of the law of the case doctrine would work a manifest injustice in the present case. As noted above, an accident which occurs when a trucker is "bob-tailing" it home for the weekend does not occur within the course and scope of his employment with his carrier as a matter of law. *Pace*, 276 N.E.2d 213. Under the undisputed facts, both the liability insurer of Underwood and the personal liability insurer of Cambe (Pennsylvania) are appropriately called upon to indemnify against Cambe's negligence. Even after the policy limits of both policies are exhausted, the McCaslins will remain undercompensated for their injuries in an amount in excess of a million dollars ($1,250,000.00). Therefore, we believe it would be manifestly unjust under the present undisputed circumstances to permit Pennsylvania to escape its responsibility to indemnify Cambe under the bob-tail policy for an accident which took place while Cambe was bob-tailing.[3]

## II.

Whether coverage under Cambe's bob-tail policy is excluded under policy exclusion number 10?

Pennsylvania argues that the following policy exclusion precludes coverage for the McCaslin accident:

This insurance does not apply to any of the following:

\* \* \* \* \* \*

10. COMPLETED OPERATIONS

'Bodily injury' or 'property damage' *arising out of your work* after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operation performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

(Emphasis ours).

Pennsylvania asserts that because Cambe had completed his work and was bob-tailing home at the time of the accident, exclusion 10 operates to deny him coverage.

■■■ Exclusion 10 does not and cannot mean what Pennsylvania would have this court to believe. To hold that the bob-tail policy does not apply whenever Cambe is working in Underwood's business and that it also does not apply after that work has been completed would render coverage under the policy illusory. In determining the amount due for loss under an insurance policy, the true meaning of the contract must be ascertained from all its provisions, and not from a literal or technical construction of an isolated or special clause. *Meridian Mutual Insurance Company v. Richie* (1989), Ind., 540 N.E.2d 27 (decision vacated on rehearing on other grounds, 544 N.E.2d 488). Illusory coverage is violative of public policy as a matter of law. *Id.* Exclusionary clauses are to be construed strongly against insurers. *Asbury v. Indiana Union Mutual Insurance Company* (1982), Ind.App., 441 N.E.2d 232. To the extent an insurance policy is ambiguous, it must be interpreted in favor of coverage to promote the underlying purpose of indemnity. *Tate v. Secura Insurance* (1992), Ind., 587 N.E.2d 665.

■■ Exclusion 10 excludes coverage for damage "arising out of your work." We

---

**3.** We analyzed this case under the law of the case doctrine because the parties briefed it that way. However, it is our opinion that the issue of whether facts established at trial are binding during proceedings supplemental presents a classic application of the doctrine of collateral estoppel. *Liberty Mutual Insurance Company v. Metzler* (1992), Ind.App., 586 N.E.2d 897; *State Farm Mutual Automobile Insurance Co. v. Glasgow* (1985), Ind.App., 478 N.E.2d 918; *Bender v. Peay* (1982), Ind.App., 433 N.E.2d 788; *Snodgrass v. Baize* (1980), Ind.App., 405 N.E.2d 48. An application of the doctrine of collateral estoppel would demand an identical result un-

der the present circumstances. As we concluded in our analysis above, whether Cambe was operating his rig in the scope of his employment was immaterial to the disposition of the original action. In fact, we held the scope of employment question was not at issue. Therefore, the "nonissue" involved in this case would not invoke a collateral estoppel upon the McCaslins because it was not a point or question actually litigated and determined in the original action. *Town of Flora v. Indiana Service Corporation* (1944), 222 Ind. 253, 257, 53 N.E.2d 161, 163.

interpret this language as excluding coverage for negligent acts which arise out of the trucker's work but which do not result in bodily injury or property damage until after the work is completed. For example, we believe that exclusion 10 would properly operate to exclude coverage under the bob-tail policy should Cambe negligently strike the corner of a building while he is delivering a load to a business and then later, after Cambe's work has been completed, the building collapses and causes bodily injury.

The McCaslin/Cambe claim in the present case did not arise out of Cambe's work. The claim arose out of an accident which took place when Cambe was released from work and was bob-tailing home for the weekend. Therefore, exclusion 10 of the Pennsylvania bob-tail policy does not apply under the present circumstances.

### III.

Whether Cambe gave notice to Pennsylvania as required under the policy?

Pennsylvania asserts that coverage under its policy is precluded because its *claim department* was first notified of the accident on January 30, 1991 after the initiation of the present proceedings supplemental. Pennsylvania asserts that it did not receive notice through Transportation Services, Inc. or from any other source. However, Pennsylvania does not dispute that Cambe notified 1) his carrier, Underwood, 2) the insurance agency that sold the Pennsylvania policy, and 3) Transportation Services, Inc. promptly after the accident.

Pennsylvania's policy provides that:

In the event of "accident," claim, "suit" or "loss," you must give us or our authorized representative prompt notice of the accident or "loss."

The policy also provides:

REPORT ALL LIABILITY LOSSES IMMEDIATELY TO THE CARRIER TO WHOM YOU ARE PERMANENTLY LEASED AND TO TRANSPORTATION INSURANCE SERVICES, INC. 800/ [PHONE NUMBERS]

It is well settled that notice to an insurance company's agent is sufficient. *Allied Fidelity Insurance Co. v. State* (1980), Ind.App., 413 N.E.2d 963. Notice to an insurance agent will be imputed to the company or presumed to have been communicated by the agent to the company. *West v. National Casualty Co.* (1916), 61 Ind. App. 479, 112 N.E. 115. Notice to an insurance agent is binding upon the company even if the notice is not communicated to the company. *Western Insurance Co. v. Ashby* (1913), 53 Ind.App. 518, 102 N.E. 45.

Cambe provided the notice required under the policy. Pennsylvania's naked assertion that its claims department never received notice of the accident is insufficient to relieve it from its responsibility to indemnify Cambe under the policy.

### IV.

Whether the McCaslins have standing to proceed against Pennsylvania?

Pennsylvania asserts that Cambe, and only Cambe, is insured under the bob-tail policy and the McCaslins have no standing to seek to attach Pennsylvania's policy in proceedings supplemental. Pennsylvania cites *Martin v. Levinson* (1980), Ind.App., 409 N.E.2d 1239, for the proposition that a plaintiff may not bring his tort suit directly against a liability insurer.

We believe Pennsylvania's argument is extraordinarily specious and evidences gross disingenuousness. We find it most difficult to believe that an insurance company, involved in a dispute over one-half million dollars, would be unaware of well-settled law regarding the garnishment of insurance policies in proceedings supplemental. A plaintiff who obtains a tort judgment against a debtor may garnish the debtor's liability insurance policy which insures the debtor against liability for damages of the kind recovered against him in proceedings supplemental. Ind.Trial Rule 64(B)(2); *Allstate Insurance Co. v. Morrison* (1970), 146 Ind.App. 497, 256 N.E.2d 918. Pennsylvania's citation to the entirely inapposite *Martin* case is not well taken.

## CONCLUSION

Based on the above, we hold that the trial court's dismissal of the McCaslin's motion for proceedings supplemental was erroneous. In the instant case, the McCaslins established a prima facie case in proceedings supplemental by presenting evidence of the judgment, the insurance policy, and facial coverage under the policy. *Snodgrass v. Baize* (1980), Ind.App., 409 N.E.2d 645. It then became incumbent upon Pennsylvania to go forward with evidence sufficient to create a genuine question of fact. *Id.* This Pennsylvania has failed to do.

There is no dispute that Cambe was bobtailing at the time of the accident, the precise activity for which Pennsylvania's policy contemplates coverage. Pennsylvania has failed to raise any genuine factual question or legal argument sufficient to absolve it from its responsibility to indemnify Cambe under the present circumstances. Therefore, we reverse and remand for proceedings consistent with this decision.

Judgment reversed.

RATLIFF, C.J., and GARRARD, J., concur.